# United States Court of Appeals for the Federal Circuit

---

**LUIS A. MARTINEZ-BODON,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2021-1328

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-3721, Chief Judge Margaret C. Bartley, Judge Joseph L. Falvey Jr., Judge Michael P. Allen.

---

Decided: March 15, 2022

---

CHRISTIAN ARTHUR MCTARNAGHAN, Chisholm Chisholm & Kilpatrick, Providence, RI, argued for claimant-appellant. Also represented by BARBARA J. COOK, APRIL DONAHOWER, ZACHARY STOLZ; MEGAN BRITTNEY HALL, Disabled American Veterans, Cold Spring, KY.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR.; JONATHAN

KRISCH, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

————————————

Before REYNA, CLEVENGER, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Luis Martinez-Bodon appeals the decision of the United States Court of Appeals for Veterans Claims affirming a Board of Veterans' Appeals decision that Mr. Martinez-Bodon is not entitled to service connection for a mental condition. Because we agree with the Veterans Court that 38 C.F.R. §§ 4.125(a) and 4.130 require a DSM–5 diagnosis as a precondition to compensate a mental condition, we affirm.

I

Mr. Martinez-Bodon served on active duty in the U.S. Army from August 1967 to March 1969. In April 2016, he filed a claim for benefits for diabetes and for anxiety secondary to his diabetes. At his Veterans Affairs psychiatric examination in September 2016, Mr. Martinez-Bodon reported: "I can't sleep well, my right eye trembles too much and that bothers me and I get very anxious about it." Appx31. He denied having other symptoms. The VA examiner found that these symptoms did not meet the "criteria for a mental condition as per DSM–5" and thus concluded that she could not establish a relationship between Mr. Martinez-Bodon's diabetes and anxiety. Appx29, 34. The VA therefore granted him service connection for diabetes but denied him service connection for a mental condition.

Mr. Martinez-Bodon appealed that denial to the Board of Veterans' Appeals, but the Board reached the same result. He then appealed to the United States Court of Appeals for Veterans Claims, arguing that even without a formal diagnosis, his symptoms constitute a disability for

service-connection purposes under this court's definition of "disability" in *Saunders v. Wilkie*, 886 F.3d 1356, 1363 (Fed. Cir. 2018). The Veterans Court rejected Mr. Martinez-Bodon's argument and affirmed the Board's decision, interpreting two regulations, 38 C.F.R. §§ 4.125(a) and 4.130, "to require a DSM–5 diagnosis as a precondition to compensate mental conditions." *Martinez-Bodon v. Wilkie*, 32 Vet. App. 393, 401 (Vet. App. 2020) (*Veterans Court Decision*). Mr. Martinez-Bodon appeals.

II

Under 38 U.S.C § 7292(a), we have jurisdiction to review a Veterans Court decision "with respect to the validity of a decision of the Court on a rule of law or of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the Court in making the decision." We review statutory and regulatory interpretations of the Veterans Court de novo. *Gazelle v. Shulkin*, 868 F.3d 1006, 1009 (Fed. Cir. 2017). Unless an appeal from a Veterans Court decision presents a constitutional issue, we lack jurisdiction to review "a challenge to a factual determination," or "a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C § 7292(d)(2).

A

We first address the role of *Saunders* in this case. In *Saunders*, we held that pain that reaches the level of a "functional impairment of earning capacity" could constitute a "disability" under 38 U.S.C. § 1110. *Saunders*, 886 F.3d at 1367–68. Before the Veterans Court, Mr. Martinez-Bodon argued that requiring a formal diagnosis of a mental condition to establish service connection is inconsistent with that holding. Specifically, Mr. Martinez-Bodon asserted "that the holding in *Saunders* extends to more than just pain and 'encompasses any undiagnosed disability that results in functional loss.'" *Veterans Court Decision* at 396.

*Saunders* does not apply in these circumstances. As we recently explained in *Larson v. McDonough*, "*Saunders* articulated a definition of 'disability' for § 1110 purposes that is distinct from and not coextensive with disabilities listed on the rating schedule." 10 F.4th 1325, 1329 (Fed. Cir. 2021). The question raised in *Saunders* was whether conditions *not* on the rating schedule may still be considered for service connection purposes under § 1110. That is not the question raised here. Here, we have a specific ratings table for mental conditions, § 4.130, and the veteran is seeking a rating under that table. Because §§ 4.125 and 4.130 speak precisely to the issue raised, they must govern. To the extent Mr. Martinez-Bodon asks us to review the actual contents of that ratings table, we lack jurisdiction to do so. *See Wanner v. Principi*, 370 F.3d 1124, 1129 (Fed. Cir. 2004); *Wingard v. McDonald*, 779 F.3d 1354, 1357 (Fed. Cir. 2015).

B

Mr. Martinez-Bodon argues that the Veterans Court wrongly interpreted 38 C.F.R. §§ 4.125(a) and 4.130, and we have jurisdiction to review the Board's interpretation of those regulations. We must determine whether § 4.125(a) and the rating schedule in § 4.130 require a mental condition to be formally diagnosed in order for compensation to be awarded. We hold that they do.

We begin with the relevant regulations. "In construing regulatory language, we must read the disputed language in the context of the entire regulation as well as other related regulatory sections in order to determine the language's plain meaning." Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013). The preamble to the schedule of ratings for mental disorders in § 4.130 reads:

The nomenclature employed in this portion of the rating schedule is based upon the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM–

5) (see § 4.125 for availability information). *Rating agencies must be thoroughly familiar with this manual to properly implement the directives in § 4.125 through § 4.129 and to apply the general rating formula for mental disorders in § 4.130.*

38 C.F.R. § 4.130 (2020) (emphasis added). The preamble emphasizes the centrality of the DSM–5 to diagnosing and rating mental disorders for service connection and requires examiners to be familiar with its contents. Section 4.130 then goes on to list diagnostic codes for over 30 mental disorders and provides a general rating formula for mental disorders, as excerpted below:

|  | Rating |
|---|---|
| Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). | 30 |
| Occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication. | 10 |
| *A mental condition has been formally diagnosed,* but symptoms are not severe enough either to interfere with occupational and social functioning or to require continuous medication. | 0 |

*Id.* (emphasis added)

38 C.F.R. § 4.125, entitled "Diagnosis of mental disorders," reads:

> (a) *If the diagnosis of a mental disorder does not conform to DSM–5* or is not supported by the findings on the examination report, the rating agency shall return the report to the examiner to substantiate the diagnosis. Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM–5), American Psychiatric Association (2013), is incorporated by reference into this section . . . .

38 C.F.R. § 4.125(a) (2020) (emphasis added).

Section 4.125(a) must be read in conjunction with § 4.130 because "regulations that precede the rating schedule for [a condition] explain how to arrive at proper evaluations under the [diagnostic codes] appearing in the disability rating schedule." *Petitti v. McDonald*, 27 Vet. App. 415, 424 (2015). Thus, § 4.125(a) instructs that a veteran must first have a mental disorder diagnosis consistent with the DSM–5 before the veteran can proceed to rating under § 4.130. Again, both regulations emphasize the importance of the DSM–5 to diagnosis and rating, incorporating the manual by reference and indicating that a DSM–5 diagnosis is required for service connection.

The zero percent rating level explicitly requires that "[a] mental condition has been formally diagnosed." § 4.130. Mr. Martinez-Bodon argues that the absence of that language from the other rating levels means that no diagnosis is required above the 0% level. However, the ratings regime must be read as a whole. And the structure of the entire ratings table indicates that each higher level includes the same baseline requirement: a diagnosis. Each rating level is based on severity, with symptoms and occupational and social impairments increasing in severity with each step up in rating. As the Veterans Court

reasoned, "[t]his upwardly cascading nature of the rating criteria, when read in the context of the introductory paragraph's emphasis on the DSM–5, plainly supports that § 4.130 requires a DSM–5 diagnosis in order to rate mental conditions at every rating level." *Veterans Court Decision* at 400.

Mr. Martinez-Bodon's interpretation would mean that "a veteran would have to meet a more stringent requirement—a DSM–5 diagnosis—for a noncompensable rating than he or she would for a 30, 50, or 100% rating." *Id.* We agree with the Veterans Court that such an absurd result should be avoided. *See United States v. Turkette*, 452 U.S. 576, 580 (1981). If a DSM–5 diagnosis were required only at the zero percent level, then the regulations' repeated emphasis on the DSM–5 would be rendered largely insignificant, if not superfluous. But "[i]t is our duty to give effect, if possible, to every clause and word" of the regulations. *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (cleaned up). It cannot be that the DSM–5 is critical to rating and diagnosis at the noncompensable level but discarded at levels that could provide significant compensation.

Mr. Martinez-Bodon next argues that the "if" at the beginning of § 4.125(a) indicates that the regulation is "conditional and applies only when a diagnosis is at issue in a case," that is, "cases where a mental health disorder has been diagnosed." Appellant's Br. 16. In Mr. Martinez-Bodon's view, if there has *not* been a diagnosis, then § 4.125 does not apply, and the agency should proceed to rate a veteran's symptoms anyway. But this interpretation is at odds with the regulatory framework, as discussed above. "If psychiatric symptoms without a DSM–5 diagnosis could be rated, then § 4.125(a) would be eliminated from consideration at all compensable rating levels under § 4.130 and would only apply at the noncompensable disability level." *Veterans Court Decision* at 401. To give full effect to the regulation, § 4.125(a) is best read not as conditioned on

diagnoses, but as a requirement that a diagnosis be made for any rating to apply under § 4.130, which directly follows it.

Other regulations for service connection also recognize § 4.125 as requiring a diagnosis in order for a veteran to proceed to rating. For example, the regulation governing service connection for posttraumatic stress disorder states that "[s]ervice connection for posttraumatic stress disorder requires medical evidence diagnosing the condition *in accordance with § 4.125(a) of this chapter.*" 38 C.F.R. § 3.304(f) (emphasis added). Mr. Martinez-Bodon argues that this shows that the Secretary knows how to explicitly require a diagnosis when intended and failed to do so at the compensable levels in § 4.130. However, the PTSD regulation makes specific reference to § 4.125(a) only because it is in a separate part of the chapter. Because § 4.130 directly follows § 4.125, there is no need to restate the requirement.

C

Responses made to comments on 1996 amendments of the regulations show that the VA understood them to unambiguously require a diagnosis. Before the amendments, §§ 4.125 and 4.126 included language similar to that in § 4.130's preamble, stating that "it is imperative that rating personnel familiarize themselves thoroughly with [the DSM]" in order to rate psychiatric conditions. 38 C.F.R. § 4.125 (1996). Section 4.126 explicitly stated that "[i]t must be established first that a true mental disorder exists. The disorder will be diagnosed in accordance with the APA manual. A diagnosis not in accord with this manual is not acceptable for rating purposes and will be returned through channels to the examiner." 38 C.F.R. § 4.126(a) (1996). Revisions effective in 1996 removed that language because it was already included in § 4.130, and thus need not be repeated:

> [A] note in § 4.130 states that the nomenclature in the schedule is based on DSM–IV and that rating agencies must be thoroughly familiar with this manual to properly implement the directives in § 4.125 through § 4.129 and to apply the general rating formula for mental disorders in § 4.130. *This information is direct and unambiguous, and therefore there is no need to include the same material in §§ 4.125 and 4.126.*

Schedule for Rating Disabilities; Mental Disorders, 61 Fed. Reg. 52,695, 52,696 (Oct. 8, 1996) (emphasis added).

The DSM–5, incorporated by reference and subject to notice-and-comment rulemaking, provides a standardized guide for diagnosis upon which agency raters can rely. The plain language of the regulations, their structure, and their consistent emphasis on the DSM–5 lead us to conclude that a DSM–5 diagnosis is required for service connection to be awarded under § 4.130.

## III

We have considered Mr. Martinez-Bodon's remaining arguments and find them unpersuasive. Because 38 C.F.R. §§ 4.125(a) and 4.130 require a formal diagnosis as a precondition to compensate mental conditions, we affirm the Veterans Court's decision denying Mr. Martinez-Bodon service connection for an anxiety disorder.

**AFFIRMED**

No costs.