# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-3042

GARY DEAN JACKSON, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 9, 2023                         Decided December 27, 2023)

*Kenneth M. Carpenter*, of Topeka, Kansas, with whom Mark D. Mathews, of Seminole, Florida, was on the brief for the appellant.

*Alex L. Kutrolli*, with whom *Richard J. Hipolit*, Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Amanda M. Haddock*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, FALVEY, and LAURER, *Judges*.

FALVEY, *Judge*: Assisted by counsel, Marine Corps veteran Gary Dean Jackson appeals those parts of the February 7, 2022, Board of Veterans' Appeals decision that denied ratings above 20% for type II diabetes and bilateral lower extremity diabetic peripheral neuropathy. His appeal is timely and within our jurisdiction. *See* 38 U.S.C. §§ 7252(a), 7266(a). This precedential decision addresses only Mr. Jackson's diabetes rating; his neuropathy ratings and other matters decided by the Board are addressed in a single-judge memorandum decision that will be issued contemporaneously with this panel decision.[1]

Under the principles laid out in *Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990), the issue of Mr. Jackson's diabetes rating was referred to a panel of this Court, with oral argument,[2] to address how VA must consider the use of medication when rating diabetes under 38 C.F.R. § 4.119, Diagnostic Code (DC) 7913.

---

[1] We return to the procedural device we have used to bifurcate the Court's decisions on appellant's two claims below. *See infra* Part III.

[2] Notre Dame Law School hosted oral argument. The Court thanks the school for its hospitality.

With shifting and unclear positions from Mr. Jackson at oral argument, we focus our review on those clear arguments set out in his brief, particularly given that Mr. Jackson appeared to resurrect them towards the end of his rebuttal argument, after appearing to renounce them during his opening argument.

In his briefs, Mr. Jackson argues that § 4.119, DC 7913 doesn't consider the ameliorative effects of his medication and thus, he reasons, the Board erred by failing to figure out the severity of his diabetes without those effects. The Secretary disagrees; he argues that, as required by DC 7913, the Board considered whether Mr. Jackson's diabetes required medication.

In the end, we find that the Secretary has the better argument. And, as we explain, we hold that, because VA must follow the criteria set out in its own regulations, and because DC 7913 specifically considers the effect of treatment, including medication, the Board must rate diabetes by considering whether the veteran uses medication to control his or her diabetes. Because that's what the Board did here, we affirm.

## I. BACKGROUND

This case began with Mr. Jackson's April 2020 claim for an increased rating of his service-connected diabetes. Record (R.) at 1422-26. To help develop this claim, VA provided Mr. Jackson with a medical examination in July 2020 to determine the severity of his diabetes. R. at 392-97. The VA examiner confirmed that Mr. Jackson has type II diabetes, which he manages with a restricted diet and an oral hypoglycemic agent. R. at 393. The examiner also noted that Mr. Jackson did not need insulin or regulation of activities and did not have episodes of ketoacidosis or hypoglycemia. *Id*.

Based on this exam, VA issued a rating decision in September 2020 increasing Mr. Jackson's diabetes rating from 10% to 20%. R. at 263-79. One year later, Mr. Jackson appealed to the Board, selecting the evidence submission docket. R. at 35. Even so, he did not submit any new evidence relevant to his diabetes during the 90-day evidence submission period.

In February 2022, the Board issued the decision on appeal, denying a rating above 20% for diabetes. R. at 1-18. Mr. Jackson then appealed to this Court.

## II. ANALYSIS

### A. The Parties' Arguments

In his briefs, Mr. Jackson argues that the Board erred when it assigned a 20% rating because the rating criteria for diabetes do not contemplate the effect of his medication. Thus, he reasons that the Board needed to know what symptoms he would suffer from if he were not using medication. Appellant's Brief (App. Br.) at 18-19. As will become clear when we get into the specifics of the diabetes rating criteria, because Mr. Jackson does not use insulin and does not require regulation of activities, the only way for him to get a higher rating would be if VA had to consider whether he would have to use insulin and regulate his activities without the oral hypoglycemic agent that he currently uses. That is, if the Board must discount the ameliorative effects of the medication he is taking when it rates his diabetes, Mr. Jackson could potentially have a higher rating. Without passing judgment on the merits, we can say this argument is clear and understandable.

Unfortunately, that clear and understandable position is not what we heard at oral argument. True, Mr. Jackson's counsel at oral argument was not the same attorney who wrote the briefs, and we understand that sometimes an argument can evolve with oral argument preparation, but the drastic change in position that emerged at oral argument goes well beyond that.

Mr. Jackson began by arguing that DC 7913 is unclear because it does not clearly say how VA should consider the use of medication. But he then told us that discounting the effects of medication would not work and explained that this is because "the diagnostic code itself factors in the use of medication as a continuum at each succeeding rating." Oral Argument at 7:35–8:41, https://www.youtube.com/live/jRGTiR2g30g?si=Y-aXucIsH6mtQqXp&t=455. As he put it, with the "10% rating there was no medication, it was managed by dietary restrictions alone. That guarantees . . . the assignment of a 10% rating. When the veteran is required to take medication, you then evaluate based upon the combination of taking medication as a constant and the descriptive symptoms that are outlined in the diagnostic code." *Id*.

This argument went against his brief so much that the Court asked him to clarify. When that happened, Mr. Jackson confirmed that he had changed positions: that he was not arguing that the Board needed to figure out his diabetes symptoms as they would have existed without the use of medication. *Id*. at 16:00-16:25.

Still, when it came to his rebuttal argument, Mr. Jackson told us that, while the regulation "contemplates the use of th[e] medication," it doesn't "describe the effects of that medication." *Id.* at 40:42-41:20. Thus, Mr. Jackson appeared to be trying to revive his briefed argument where he told us that DC 7913 did not contemplate the ameliorative effects of medication as discussed in our case law.

With such shifting positions, it would have been hard to figure out what exactly Mr. Jackson was arguing if we relied only on his presentation at oral argument and ignored his brief. We don't consider confusing arguments that we can't understand. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416-17 (2006). Besides these shifting positions, Mr. Jackson also raised arguments that were not in his opening brief, including ones that he admitted are foreclosed by binding Federal Circuit precedent. Oral argument is not the time for brand new arguments, and we can't overrule the Federal Circuit. *Overton v. Wilkie*, 30 Vet.App. 257, 265 (2018).

So then, what should we do? If we accept that Mr. Jackson disclaimed his only briefed argument, we are left only with arguments that we can't or won't consider. That would leave Mr. Jackson with nothing to challenge his diabetes rating. We assume that is not what he wants to happen.[3]

Because Mr. Jackson's only coherent argument comes from his brief, and he seemed to resurrect that argument in rebuttal, that's the argument we will review. And so, we take Mr. Jackson to still contend that the Board was required to discount the ameliorative effects of his medication given the Court's precedent in *Jones v. Shinseki*, 26 Vet.App. 56 (2012).

For his part, the Secretary has consistently disagreed with that argument. He reasons that the Board got the rating right because the rating criteria for diabetes contemplate the use of medication and *Jones* does not apply. Thus, he asks us to reject Mr. Jackson's argument and affirm the Board decision.

---

[3] This sudden change in position at oral argument is starting to be a pattern for both the medication argument and appellant's counsel at oral argument. *See Berdy v. McDonough*, No. 22-1199, 2023 U.S. App. Vet. Claims LEXIS 805, at *5 (May 17, 2023). In *Berdy*, we had substantially the same argument (though with a different regulation), the same counsel (who again was not counsel on the briefs), and the same complete shift in position. We recognize that in both *Berdy* and here, counsel did not write the briefing. But because we don't consider new arguments raised at oral argument, we fail to see the benefit of disclaiming the briefed argument with nothing left to fall back on. It makes oral argument a waste of the Court's time and risks leaving the client with nothing.

To resolve the parties' argument, we first lay out the standard governing our review and VA's methods for rating disabilities. Then we move on to our existing case law on diabetes ratings. And finally, we turn to the specific rating code at issue to resolve the dispute before us.

## B. Standard of Review

The relevant facts are not in dispute. Mr. Jackson has diabetes requiring a restricted diet and the use of a hypoglycemic agent. Thus, the only issue for us to resolve is how the Board needed to rate Mr. Jackson's diabetes given his medication; if DC 7913 required the Board to discount the effect of that medication and consider whether his symptoms would be more severe without the hypoglycemic agent that he uses, there is a chance that Mr. Jackson could have a higher rating. This is a legal question. And it is one we review de novo. *See Lane v. Principi,* 339 F.3d 1331, 1339 (Fed. Cir. 2003).

That said, because we're dealing with a question involving rating criteria, we need to be careful not to overstep our jurisdictional limitations. Even as Congress gave us exclusive jurisdiction to review Board decisions, it told us that we "may not review the schedule of ratings for disabilities." 38 U.S.C. § 7252(b). Thus, mindful of this limitation, we confine ourselves to reviewing the interpretation and application of the diagnostic code, a path we've traveled before. *See, e.g.*, *Jones*, 26 Vet.App. at 61 (explaining how this Court has "the ability to review the Board's interpretation and application of a DC"); *see also Camacho v. Nicholson*, 21 Vet.App. 360, 366 (2007) (interpreting DC 7913, the rating criteria for diabetes).

## C. Basics of VA Ratings

Congress requires VA to pay compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. §§ 1110, § 1131. To facilitate these payments, Congress also had VA "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries." 38 U.S.C. § 1155.

As ordered, VA created a schedule for rating disabilities. The resulting "rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service." 38 C.F.R. § 4.1 (2023). The assigned "percentage ratings represent . . . the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." *Id*. When it comes to

"application of this schedule, accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition." *Id*.

This is because "[t]he basis of disability evaluations is the ability . . . to function under the ordinary conditions of daily life including employment." 38 C.F.R. § 4.10 (2023). Whatever the affected body part or system, "evaluations are based upon lack of usefulness, of these parts or systems, especially in self-support." *Id*. And so, a VA medical examiner has "the responsibility of furnishing, in addition to the etiological, anatomical, pathological, laboratory and prognostic data required for ordinary medical classification, full description of the effects of disability upon the person's ordinary activity." *Id*.

To recap, Congress wanted VA to pay compensation to those men and women who became disabled as a result of their service to our Nation. To do so, it required VA to create a rating schedule focusing on the average impairment of earning capacity resulting from those disabilities. And VA did so; creating a schedule organized into percentages that represent various levels of occupational impairment differentiated by symptoms and features of the disability. The focus is on figuring out and compensating for the effects of disability on a veteran's activity and earning capacity.

### D. Medication in VA Ratings

But how does a veteran's use of medication factor into this inquiry? If a veteran takes medication that effectively treats the disability, should VA award a lower rating? This is a question we've grappled with before, starting with *Jones*, 26 Vet.App. at 56.

In *Jones*, the Board had denied a higher rating for IBS under DC 7319 in part because "anti-acid medication provided some relief of symptoms." *Id*. at 59. On appeal, Mr. Jones argued that the Board erred "by considering factors outside the schedular rating criteria . . .—namely, the fact that medication afforded the appellant some level of relief from his symptoms." *Id*. We agreed. In so doing, we rejected the Secretary's argument that "the criteria for IBS contemplate whether the frequency or severity of IBS symptoms were lessened or controlled with medication, as the criteria do not differentiate between a claimant's condition with or without medication." *Id*. at 60 (cleaned up).

Our reasoning turned on two things. First, the rule, which appellant cites, that the Board is generally not allowed to consider factors outside the rating criteria when rating the disability. *Id*. at 62-63; *see* App. Br. at 17-18. And second, the fact that "[t]he Secretary has demonstrated in

6

other DCs that he is aware of how to include the effect of medication as a factor to be considered when rating a particular disability." *Id*. at 62. We took this to mean that the Secretary's "failure to include the effects of medication as a criterion to be considered under DC 7319 while including such effects as criteria under other DCs must therefore be read as a deliberate choice." *Id*. And so, we held that "the Board may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria." *Id*. at 63.

A few years later we returned to the ameliorative effect of medication in *McCarroll v. McDonald*, 28 Vet.App. 267 (2016) (en banc), when we addressed how the Board should treat medication when rating hypertension under DC 7101. As we explained, "if DC 7101 does not specifically contemplate the effects of medication, the Board is required pursuant to *Jones* to discount the ameliorative effects of medication when evaluating hypertension. Conversely, if DC 7101 *does* specifically contemplate the effects of medication, then *Jones* is inapplicable." *McCarroll*, 28 Vet.App. at 271.

In the end, we held "that DC 7101 contemplates the effects of medication and, therefore, *Jones* does not apply." *Id*. To get there, we turned to the text of DC 7101. We reviewed the blood pressure measurements required for ratings ranging from 60% to 20% and then zeroed in on the criteria for the 10% rating, noting that this "evaluation is warranted in three circumstances: first, diastolic pressure predominantly 100 or more; second, systolic pressure predominantly 160 or more; or third, as a 'minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control.'" *Id*. at 271-72 *quoting* 38 C.F.R. § 4.104 (2016).

Based on this, we read the regulation as allowing for compensable ratings under two alternative scenarios. "First, a veteran whose blood pressure is currently controlled by medication . . . but who has a history of diastolic pressure predominantly 100 or more is entitled to receive the minimum compensable evaluation of 10%." *Id*. at 272. And second, we have the veteran whose blood pressure is elevated to varying degrees and who is thus "entitled to evaluations ranging from 10% to 60%." *Id.* Thus, we concluded that "these two scenarios clearly contemplate the effects of medication: either a veteran's blood pressure is controlled by medication, warranting a 10% evaluation if there is a history of elevated systolic pressure, or it is not, in which case the actual blood pressure level determines the disability rating." *Id*.

7

In the end *McCarroll* built on the foundation of *Jones*. We reaffirmed that VA may not rely on factors outside the rating criteria, including the use of medication, unless the rating criteria contemplate the use of medication. And in *McCarroll* we explained how rating criteria can contemplate the use of medication.

## E. DC 7913

We now turn to the diabetes ratings. If DC 7913 does not specifically contemplate the effects of medication, as appellant contends, then the Board may not rely on improvements from medication to award a rating when evaluating diabetes. If, on the other hand, DC 7913 *does* contemplate the effects of medication, then *Jones* doesn't apply.

As in *Jones* and *McCarroll* our inquiry starts with the text of the regulation; after all, when trying to figure out what a regulation means, "we begin with the text of the regulation." *Holmes v. Wilkie*, 33 Vet.App. 67, 70 (2020). For the lowest compensable rating of 10%, a veteran needs to have diabetes that is "[m]anageable by restricted diet only." 38 C.F.R. § 4.119, DC 7913 (2023). For a 20% rating, the veteran needs diabetes "[r]equiring one or more daily injection of insulin and restricted diet, or; oral hypoglycemic agent and restricted diet." *Id*. A veteran would get a 40% rating, with diabetes "[r]equiring one or more daily injection of insulin, restricted diet, and regulation of activities." *Id*. Then to have a 60% rating the veteran would need diabetes "[r]equiring one or more daily injection of insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated." *Id*. Finally, the veteran would receive a 100% with diabetes "[r]equiring more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities) with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated." *Id*.

How then do we examine this text to figure out what it means? If the meaning is clear from the text, that is the end of the matter. *Holmes*, 33 Vet.App. at 70. Without ambiguity, "[t]he regulation then just means what it means—and the court must give it effect." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). And to uncover the meaning of the regulation, we use all traditional rules of statutory and regulatory interpretation; only once we've exhausted those do we have to concern

8

ourselves with ambiguity. *See Sheppard v. McDonough*, 33 Vet.App. 353, 359 (2021), *appeal dismissed*, No. 2021-1928, 2022 WL 1438733 (Fed. Cir. May 6, 2022).

That said, we're not writing on a blank slate; earlier decisions have already done some work for us. For example, in *Camacho*, we held that when the Secretary used "and" in DC 7913, he meant that the regulation was conjunctive and that a veteran needed to have all the symptoms joined by that word to qualify for that rating. 21 Vet.App. at 366.

Later, the Federal Circuit dealt with the same issue and agreed with our conclusion from *Camacho*. This was in *Middleton v. Shinseki*, a case in which the Federal Circuit held that "the enumerated elements of DC 7913 required for a 40% rating are part of a structured scheme of specific, successive, cumulative criteria for establishing a disability rating: each higher rating includes the same criteria as the lower rating plus distinct new criteria." 727 F.3d 1172, 1178 (Fed. Cir. 2013). The court then explained that

> a 10% rating is warranted when a veteran's diabetes is '[m]anageable by restricted diet only.' The restricted diet criterion is an element in each of the alternatives defining eligibility for the 20% rating, *i.e.,* "[r]equiring insulin and restricted diet, or; oral hypoglycemic agent and restricted diet." *Id.* And satisfaction of the in-the-alternative criterion for the 20% rating is required to obtain the 40% rating, to which is added the elements "[r]equiring insulin" and "regulation of activities."

*Id*., quoting 38 C.F.R. § 4.119, DC 7913.

From these decisions we know that the rating criteria for diabetes build off each other. That is, to qualify for the next higher rating, a veteran must meet the requirements of the lower rating and then meet whatever other specifications the higher rating requires. How does the use of medication factor into this?

F. DC 7913 Contemplates Medication

On its face, DC 7913 contemplates medication in two ways, starting with the 20% level. To get a 20% rating, a veteran would need diabetes managed by a restricted diet and "one or more daily injection of insulin" or an "oral hypoglycemic agent." 38 C.F.R. § 4.119 DC 7913. All higher ratings continue to require the "daily injection of insulin." *Id*. Thus, if we bring this back to our rule from *Jones*, we see that DC 7913 expressly contemplates the use of medication. So the Secretary reasons that medication is fair game for the Board to consider when assigning a rating.

"Not so fast!" says Mr. Jackson. He doesn't disagree that "[t]he criteria for certain ratings do consider whether the veteran is taking insulin or an oral hypoglycemic agent, but the criteria is based only on whether the veteran takes the medication; the criteria do not direct the VA to rate

the symptoms as they exist while under the relief provided" by that medication. App. Br. at 18. He explains that "[t]he question of *'is he on medication?'* is different from the question of *'what are the severity of his symptoms while on medication?'* The rating criteria under DC 7913 ask the former question but not the latter." *Id*. Thus, Mr. Jackson thinks VA needed a medical opinion that would address whether he would require insulin and regulation of activities without the ameliorative effects of his hypoglycemic agent.

The problem with Mr. Jackson's reading of the regulation is that it ignores how the Secretary structured the whole rating scheme for diabetes. "When we assess the meaning of a regulation, we should not read its words in isolation but rather in the context of the regulatory scheme and structure as a whole." *Martinez-Bodon v. Wilkie*, 32 Vet.App. 393, 400 (2020), *aff'd sub nom. Martinez-Bodon v. McDonough*, 28 F.4th 1241 (Fed. Cir. 2022). And specifically, when dealing with a diagnostic code, "the ratings regime must be read as a whole. "*Martinez-Bodon*, 28 F.4th at 1246.

Thus, for example, in *Martinez-Bodon* we concluded that for mental health ratings, the requirement for a formal diagnosis—an element mentioned only at the 0% rating—carried across to the higher ratings; that is, even though "the regulation does not repeat that diagnostic requirement at each of the higher disability levels, we interpret each higher level to include such requirement." *Martinez-Bodon*, 32 Vet.App. at 400. We explained that the rating criteria "are based on severity; each higher level is characterized, relative to the next lower level, by worsening occupational and social impairment from a mental condition," and we characterized the criteria as having an "upwardly cascading nature." *Id*. The same analysis guides us here.

Let's start with the lowest rating under DC 7913. Recall that VA awards a 10% rating when the veteran's diabetes is "*[m]anageable* by restricted diet *only*." 38 C.F.R. § 4.119 DC 7913 (emphasis added). From here, the higher ratings continue to add to the list of what is required to manage diabetes. Each level builds on the preceding one; it's a "structured scheme of specific, successive, cumulative criteria for establishing a disability rating: each higher rating includes the same criteria as the lower rating plus distinct new criteria." *Middleton*, 727 F.3d at 1178. In other words, DC 7913 has an "upwardly cascading nature." *Martinez-Bodon*, 32 Vet.App. at 400. And it is only once we get to ratings higher up in the rating schedule—the 60% and 100% ratings—that DC 7913 adds symptoms to the list of what a veteran needs to use to manage the diabetes. But the focus on diabetes management cascades through the DC.

To put it differently, the diabetes rating scheme starts with minimal treatment—diet restriction—then increases the treatment for the next few higher levels—by adding in medication and then regulation of activities. By the time a veteran reaches the two highest ratings, this treatment is not sufficiently effective and the veteran starts to experience severe symptoms like ketoacidosis or complications like hypoglycemic reactions despite the treatment.

The chief point is that when rating diabetes, we're operating under a structure where treatment— diet, medication, or regulation of activities—is the foundation of the rating criteria. In one form or another, treatment, and later medication, are contemplated by the rating criteria. The rating gets higher based on how much treatment, including medication, a veteran requires and whether that treatment controls a veteran's symptoms or causes other complications. In short, the rating criteria contemplate the effects of medication.

This reading of DC 7913 dovetails with the rule from *Camacho* and *Middleton*. Once we see that the rating criteria start by considering how diabetes is managed, that consideration of treatment carries through for the entire "successive, cumulative criteria." *Middleton*, 727 F.3d at 1178. And so, each level considers the effectiveness of treatment, and once it includes medication, the effectiveness of that medication. To do as Mr. Jackson asks—and require VA to ignore the use of medication between levels and to assign a rating when the veteran does not meet the required criteria—would be to write out that specific regulatory requirement, and that is something we cannot do. *See Barry v. McDonough*, 35 Vet.App. 111, 123–24 (2022) ("Canons of construction require us to avoid rendering any portions of a regulation meaningless or superfluous.").

This reading also dovetails with Mr. Jackson's interpretation of DC 7913 at oral argument. Recall that Mr. Jackson told us that "the diagnostic code itself factors in the use of medication as a continuum at each succeeding rating" and that while with the 10% rating you don't have medication, the diabetes is "managed by dietary restrictions alone. . . . You then evaluate based upon the combination of taking medication as a constant and the descriptive symptoms that are outlined in the diagnostic code." Oral Argument at 7:35–8:41. We agree. This is the proper way to read the diabetes rating criteria.

In the end, a plain-text reading of DC 7913 shows rating criteria focused on assessing the severity of diabetes based on various treatments, including medication. The structure and text of DC 7913 focus on what is needed to manage a veteran's diabetes. And the rating cascades higher as more treatment is necessary and as other symptoms appear despite the treatment. But the point

is, the DC contemplates the effect of that treatment, including the effect of medication. Thus, the appellant's argument for why the Board erred in rating him for diabetes fails.

Because Mr. Jackson built his entire argument about his diabetes rating on the question of whether the rating criteria contemplate the effect of medication, there is nothing left for us to do now that we have resolved that argument. Afterall, Mr. Jackson doesn't use insulin and doesn't require the regulation of activities, and so he can't move on to the 40% rating without some requirement directing VA to discount the effect of his other medication. But there is no such requirement since DC 7913 contemplates the use of medication. And because we resolve Mr. Jackson's only argument in VA's favor, we are left to affirm the Board decision.

### III. BIFURCATION PROCEDURE

As we noted above, this panel has addressed only Mr. Jackson's appeal concerning his disability rating for diabetes in this precedential decision. The single Judge to whom the appellant's case was assigned has addressed Mr. Jackson's appeal concerning his neuropathy rating in a separate, nonprecedential memorandum decision that will be issued contemporaneously with this panel decision. While this type of bifurcated approach to an appeal is not novel in the federal appellate system, it has not been used before in our Court. So, we briefly address the procedure for this bifurcated approach so that the parties understand their rights.

Simply put, the concurrent issuance of the nonprecedential memorandum decision and this precedential panel decision does not meaningfully change how the parties could have proceeded if the Court had addressed all the issues in a single decision. The only difference being that panel review is no longer an option for the panel decision and en banc review is not yet available for the single-judge decision.

To spell it out, both decisions will be issued under the same docket number and on the same date; the time for issuance of judgment and mandate will run concurrently. If a party wishes to seek further review or reconsideration under Rule 35 of the Court's Rules of Practice and Procedure, the time for such motions remains the same as always and the procedure is the same depending on what each party would like reviewed. This means that, for example, if a party wants a panel of this Court to review the single-judge decision, the party may file a motion requesting such review. Likewise, to take another example, if the party wants the full Court to review the

12

panel decision, that remains an option. And if any party wants both reviews, that party may file separate motions requesting the appropriate review. In any case, Rule 35 spells out the procedure.

And any such Rule 35 motion will toll the time for issuance of judgment in the entire action—that is, for both decisions. Moreover, if a party appeals to the Federal Circuit, that appeal will affect the entire case adjudicated under this docket number. So, the only distinction under the bifurcated approach we have employed in this appeal is that only the matters addressed in this panel decision create binding precedent; if either party believes the resolution of the single-judge decision also calls for a precedential decision, panel review remains an option.[4]

## IV. CONCLUSION

Based on the above, that part of the February 7, 2022, Board decision that denied a rating above 20% for type II diabetes is AFFIRMED. The panel is dissolved for the remaining issues from the Board decision and they will be addressed in the separate single judge decision.

---

[4] To the extent that either party has any confusion about the procedural aspects of the bifurcated approach we have used, they are free to file an appropriate motion seeking clarification.