# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-7363

GRAYSON H. WILLIAMS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided June 21, 2024)

*Benjamin R. Binder*, of Tampa, Florida, for the appellant.

*Gilles Sadak,* with whom *Richard J. Hipolit,* Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; *James B. Cowden* Deputy Chief Counsel all of Washington, D.C., were on the brief for the appellee.

Before FALVEY and JAQUITH, *Judges*, and GREENE[1], *Senior Judge*.

FALVEY, *Judge*: Marine Corps veteran Grayson H. Williams appeals through counsel a July 16, 2021, Board of Veterans' Appeals decision that denied a rating above 10% for cervical spine strain. After a stay pending a panel decision in *Costello v. McDonough*, 36 Vet.App. 43 (2023), we issued a single-judge memorandum decision remanding Mr. William's appeal to the Board. *Williams v. McDonough*, No. 21-7363, 2023 WL 4144968 (Vet. App. June 23, 2023). In that decision, we resolved Mr. Williams's appeal by deciding that the Board failed to adequately address his falls. Thus, we remanded his cervical spine rating. But we did not fully resolve Mr. Williams's argument that the Board erred by deciding his case before his deadline to modify his choice of Board appeal lane under 38 C.F.R. § 20.202(c)(2).

Even though we remanded his only claim, that decision did not provide Mr. Williams with full relief. True, his claim would have returned to the Board. But absent an order from us, he could not submit additional evidence—something that prevailing on his § 20.202(c)(2) argument could have made available to him. Thus, on reconsideration we resolve his argument about

---

[1] Judge Greene is a Senior Judge acting in recall status. *In re Recall of Retired Judge*, U.S. VET. APP. MISC. ORDER 01-24 (Jan. 3, 2024).

§ 20.202(c)(2). We thus grant Mr. William's motion for reconsideration, withdraw our earlier decision, and issue this panel decision in its stead.

Doing so, we hold that, because the regulation gives a claimant the later of one year from the date that the agency of original jurisdiction (AOJ) mails notice of the decision or 60 days from when the Board receives the Notice of Disagreement (NOD) to change the NOD and select a different lane, the Board ordinarily may not decide an appeal before this time period is up. And because that's what the Board did here, we will set aside the Board decision and remand this matter so that Mr. Williams can fully exercise his choice over how his claim should proceed.

## I. BACKGROUND

Because we resolve this case based on Mr. Williams's contention that the Board decided his appeal prematurely, we focus our review of the facts on the procedural history rather than the specifics of Mr. Williams's disability. Our decision turns on how VA processed his appeal more so than on whether Mr. Williams could be entitled to a higher rating.

Mr. Williams has been service connected at a noncompensable level for a chronic cervical spine strain since a few months after leaving service in October 1970. R. at 10,446-49, 10,531. More recently, he sought a higher rating for this disability in March 2019. R. at 6998. And, a few months later, the AOJ increased his rating to 10%, effective March 2019. R. at 6512. Mr. Williams then sought higher level review. R. at 6489-90. This attempt did not succeed and VA continued his 10% rating in a December 2020 decision. R. at 5935. Thus, in June 2021, Mr. Williams took his case to the Board. R. at 39-41.

To get there, he filed a Notice of Disagreement (NOD) and selected the direct review docket. *Id*. On June 8, 2021, VA notified him that it had received his NOD and placed his appeal on the direct review docket R. at 29-31. Tracking the text of § 20.202, this notice told Mr. Williams that he could not submit more evidence, but if wished to switch dockets, he could file a request within 60 days of the date that the Board received his NOD, "or within one year of the VA decision being appealed, whichever date is later," and that he could request an extension of time to submit such a "docket switch request."

Despite what the letter said, VA didn't give Mr. Williams the promised time to change his NOD and switch dockets. Instead, on July 16, 2021, the Board issued the decision on appeal denying a rating higher than 10%. This was less than 60 days from when the Board received his

NOD and far short of a year since the December 2020 AOJ decision. This denial brought Mr. Williams to this Court.

## II. ANALYSIS

### A. The Parties' Arguments

Among other things, Mr. Williams argues that the Board robbed him of the time vested by § 20.202(c)(2) when it decided his claim before he could seize the chance to change his NOD.[2] Under this regulation

> [a] claimant may modify the information identified in the [NOD] for the purpose of selecting a different evidentiary record option . . . . Requests to modify [an NOD] must be made by completing a new [NOD] on a form prescribed by the Secretary, and must be received at the Board within one year from the date that the agency of original jurisdiction mails notice of the decision on appeal, *or within 60 days of the date that the Board receives the Notice of Disagreement*, whichever is later.

38 C.F.R. § 20.202(c)(2) (2023) (emphasis added).

Mr. Williams filed his NOD and picked the direct review docket. The Board then issued its decision about a month later. Because of this, Mr. Williams argues that the Board's actions skirted the regulation; as he sees it, § 20.202(c)(2) gave him time to change his NOD and the Board ignored that. Besides the text of the regulation, he also invokes the fair process doctrine. Whether based on the text or fair process, Mr. Williams reasons that the time to switch lanes in § 20.202(c)(2) is illusory if the Board can issue a decision within 60 days of NOD submission. To make the case that the Board's error prejudiced him, Mr. Williams tells us that he would have modified his NOD (electing the submission of additional evidence lane) and submitted evidence—some of which is already in the record but post-dates the AOJ decision.

The Secretary disagrees. He responds that § 20.202(c)(2) is an outer limit on the time to change lanes; it is not an internal restriction on how quickly the Board can issue a decision. The

---

[2] While this matter has been pending, Mr. Williams filed two notices of supplemental authority. Rule 30(b) of our Rules of Practice and Procedure requires a party to file a notice of supplemental authority "[w]hen pertinent and significant authority comes to the attention of a party after the party's brief has been filed." U.S. VET. APP. R. 30(b). Although it's safe to assume we're aware of our own precedent, we understand Mr. Williams's efforts to comply with the rule. That said, we note that Rule 30(b) also requires that each supplemental notice "refer to the page of the brief . . . , and shall state *without argument the reasons for the supplemental citation*(s)."*Id.* And we caution that Mr. Williams's notices stretch the "without argument" part of Rule 30(b) pretty far. The rule is intended to provide a neutral citation to authority the Court may not be aware of. It is not a way to bolster arguments from the brief or introduce new arguments.

Secretary points out the regulation says nothing about the Board having to wait to decide a case. As for prejudice, the Secretary argues that there is none because Mr. Williams can submit the evidence with a supplemental claim.

## B. The Role of an NOD

To understand why the chance to modify an NOD matters, we have to step back and understand the role that the NOD plays in the Veterans Appeals Improvement and Modernization Act (AMA) world. *See Andrews v. McDonough*, 34 Vet.App. 151, 156-57 (2021) (summarizing the "whole new world" created by Congress in the AMA system).

"Central to the AMA's many reforms, claimants may now choose from three procedural lanes to obtain review of their claim within one year of the initial decision (in contrast to the legacy system's single pathway for appeal to the Board)." *Mil.-Veterans Advoc. v. Sec'y of Veterans Affs.*, 7 F.4th 1110, 1119 (Fed. Cir. 2021). These lanes are (1) higher-level review, (2) supplemental claim, or (3) an NOD to go to the Board. 38 U.S.C. § 5104C(a)(1).

When filing that NOD, the claimant now has three more options, (1) a direct review docket, (2) an evidence docket, and (3) a hearing docket. 38 C.F.R. § 20.202(b). This choice of docket is important because it limits what the Board may consider when deciding the case.

In the evidence and hearing dockets, the claimant gets the chance to submit additional evidence to the Board. *Andrews*, 34 Vet.App. at 157. But in the direct review docket, the record is limited to the evidence before VA at the time of the AOJ decision on appeal. *Id*. This means that the choice of docket can have colossal consequences for a case; if the veteran is in the wrong docket, he or she may unnecessarily wait longer for a decision or lose a chance to submit evidence that would lead the Board to decide in his or her favor.

No surprise then that the choice of docket is not set in stone; Congress required that the Secretary create an option for a claimant to modify the NOD and switch dockets. *Id*. This is how we ended up with § 20.202(c)(2)—the regulation at the heart of this case.

## C. 38 C.F.R. § 20.202(c)(2)

This brings us to the text of this regulation—which is after all the starting point when trying to figure out what a regulation requires. *Holmes v. Wilkie*, 33 Vet.App. 67, 70 (2020) ("Because this is a question of regulatory interpretation, we begin with the text of the regulation."). If the meaning of the regulation is clear, that is the end of the matter. *Id*. "Put another way, if the regulation is not ambiguous, the 'regulation then just means what it means—and the court must

4

give it effect.'" *Id.* (quoting *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019)). If Mr. Williams is correct that the text of the regulation requires VA to wait until the time to modify an NOD has run, then VA erred by deciding his appeal early.

So then, what does the regulation say about modifying an NOD? Under § 20.202(c)(2), a claimant may modify his or her NOD "for the purpose of selecting a different evidentiary record option." 38 C.F.R. § 20.202(c)(2). Such requests "must be received at the Board within one year from the date that the [AOJ] mails notice of the decision on appeal, or within 60 days of the date that the Board receives the Notice of Disagreement, whichever is later." *Id.*

As Mr. Williams reads it, § 20.202 doesn't permit VA to decide a claim before the time to modify the NOD expires. The Secretary disagrees. As he sees it, nothing in that regulation requires VA to wait. We think Mr. Williams has the better argument.

The regulation tells the claimant what he or she may do—modify the NOD; how the claimant may do so—by submitting a new one; and how long the claimant has to modify the NOD—"one year from the date that the [AOJ] mails notice of the decision on appeal, or within 60 days of the date that the Board receives the Notice of Disagreement, whichever is later." 38 C.F.R. § 20.202(c)(2). In other words, the regulation creates a right for the claimant to modify his or her NOD by submitting a new one and gives the claimant the later of a year from the AOJ decision or 60 days from when the Board receives the original NOD to do so.

This right is not limited by any language about the Board issuing a decision. Instead, the only limitation beyond the time constraints is the part that prohibits VA from granting requests to modify an NOD "if the appellant has submitted evidence or testimony." *Id.* Thus, we know VA had thought about how it wanted to limit the right to modify an NOD. And when it did so, VA did not include authority for the Board to cut the timeline short by issuing a Board decision.

Indeed, VA has done exactly that when it comes to other rights before the Board. For example, VA says that claimants in the legacy system will have "90 days following the mailing of notice . . . that an appeal has been certified to the Board, . . . *or up to and including the date the appellate decision is promulgated by the Board, whichever comes first*, [to] submit a request for a personal hearing," a change in representation, or more evidence. 38 C.F.R. § 20.1305 (2023). Likewise, those in the AMA system have "a period of 90 days following receipt of [an NOD], *or up to and including the date the appellate decision is promulgated by the Board, whichever comes first*, during which they may submit a request for a change in representation." 38 C.F.R. § 20.1304

5

(2023). Thus, we know that, when VA creates a right in regulation, it knows how to cabin that right by telling claimants it can be cut off by the Board issuing a decision. But VA chose not to do that in § 20.202(c)(2).

We don't read regulations in isolation. *Martinez-Bodon v. Wilkie*, 32 Vet.App. 393, 400 (2020), *aff'd sub nom. Martinez-Bodon v. McDonough*, 28 F.4th 1241 (Fed. Cir. 2022). Instead, we look at them as part of the larger regulatory scheme. *Id*. Within this regulatory scheme, we see that VA knows how to allow the Board to cut off a claimant's ability to do things such as submitting evidence, changing representation, or requesting a hearing. And we consider the fact that VA didn't do that in § 20.202(c)(2) to be a deliberate choice. *Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) ("Numerous authorities state that when a statute or regulation omits a term in one place that is used in other places, that omission should be regarded as intentional and given effect.")

Putting all this together, we agree with Mr. Williams that the Board cannot issue a decision until the time to modify an NOD under § 20.202(c)(2) has run. The Secretary's arguments to the contrary ring hollow.

Ultimately, that § 20.202(c)(2) doesn't expressly require the Board to wait doesn't carry much weight. Other regulations specifically say that the claimant can take an action until the Board issues a decision. So, if anything, VA's silence on whether the Board can issue a decision before the time to modify an NOD has expired backs Mr. Williams, not the Secretary.

What's more, VA's insistence that the Board can prematurely cut off the claimant's ability to modify his or her NOD conflicts with VA's earlier recognition of how important it is for claimants to have this option. As VA explained, the ability to switch dockets "accounts for the common situation in which a veteran files the [NOD] at the end of the one-year period, and does not retain representation until after the [NOD] is filed." VA Claims and Appeals Modernization, 84 Fed. Reg. 138-01 (Jan 18, 2019). And the goal of the policy was to allow "the representative . . . an opportunity to recommend that the veteran modify the initial choice of an evidentiary record." *Id.* As VA said, "[v]eterans may wish to rely on a representative to assist them in choosing the review option that best suits their needs." *Id.* But, "VA acknowledge[d] that some veterans will not retain representation until after they file a request for review." *Id.* And to make sure veterans could still get effective help with their claims, VA "amended the policy in § 20.202(c)(2) to provide an additional 60 days following receipt of the [NOD], instead of 30." *Id.*

6

This reflected VA's "hopes that this additional time will assist veterans' representatives in better serving their clients." *Id.*

Despite recognizing the importance of the ability to modify an NOD, and despite choosing to give claimants even more time to do so, VA now says that the Board can cut off that right any time it wants. We can't accept that.

In § 20.202(c)(2) VA told claimants they can modify their NODs and have the later of one year from the AOJ decision or 60 days from when the Board receives the NOD to do so. VA will have to stick to that (unless it changes the regulation). If "VA says in a regulation that it intends to give a veteran [time to modify his or her NOD], we assume that means VA will give the veteran [that time]." *Wiker v. McDonough*, 36 Vet.App. 119, 126 (2023). After all, "[i]f men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021).[3]

## D. Application to Mr. Williams

Now that we know VA can't decide a case before the deadline to modify an NOD has run, we can consider what that means for Mr. Williams. Recall that the Board received Mr. Williams's NOD in June and issued a decision in July, well before his 60-day deadline ran out. This is also months before the one-year deadline measured from the December 2020 AOJ decision. It's safe to say, the Board did not comply with § 20.202(c)(2). But that is not the end of our inquiry.

This is because Congress requires that we consider whether any error made by VA is prejudicial. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"). Thus, we must consider whether the error is harmless based on the facts of Mr. Williams's case. *See Slaughter v. McDonough*, 29 F.4th 1351, 1355 (Fed. Cir. 2022).

To show that he was harmed, Mr. Williams tells us that he had evidence about the severity of his disability—such as medical records and his own statement—that he wanted to submit to the

---

[3] We note that our decision turns on the text of § 20.202(c)(2). Thus, we do not deal with whether fair process would require VA to wait out the time to modify an NOD before issuing a decision. If the Secretary believes that having to wait the time he gave claimants in the regulation "would introduce procedural complexity and alter the fundamentally expeditious nature of the direct review lane," nothing in our decision prevents him from changing his regulation. *See Brack v. McDonough,* No. 22-3957, 2024 U.S. App. Vet. Claims LEXIS 602, at *21 (Apr. 24, 2024). That said, nothing blesses such an approach either.

7

Board. We see no reason to question whether Mr. Williams had evidence he wanted to submit. In any case, the Secretary doesn't dispute this point.

Instead, the Secretary tells us that Mr. Williams was not harmed because he can submit that evidence to VA by filing a supplemental claim; if he does so within a year, his claim would qualify as a continuously pursued claim and protect his effective date. *See* 38 U.S.C. § 5108(a); *see also* 38 C.F.R. §§ 3.2500(c)(4) (2023), 3.2501 (2023). We disagree—at least when it comes to whether Mr. Williams wasn't harmed.

To be sure, Mr. Williams can file a supplemental claim. But that doesn't put him in the same position as submitting evidence to the Board. Putting aside whether AOJ review of the evidence is the same as Board review, or whether the mechanics of submitting that evidence to the AOJ or the Board are the same, the legal burden on Mr. Williams is different.

Under VA's regulations, to successfully file a supplemental claim, a claimant needs to submit new and relevant evidence. 38 C.F.R. § 3.2501. This means submitting evidence that was "not previously part of the actual record before agency adjudicators. . . [and] tends to prove or disprove a matter at issue in a claim." 38 C.F.R. §3.2501(a)(1). Otherwise, VA would not readjduciate the claim and consider the claim on the merits based on the full record. 38 C.F.R. § 3.2501. In simple terms, with a supplemental claim, you can't just submit *any* evidence to have VA consider the merits of your claim; the evidence has to be new and relevant.

In contrast, no such "new and relevant" hurdle exists when a claimant wants to submit evidence to the Board. Neither the regulation about selecting the evidence or the hearing lane in the NOD (38 C.F.R. § 20.202(b)), nor the regulations spelling out the record in those lanes (38 C.F.R. §§ 20.302, 20.303), imposes a "new and relevant" requirement.

This means that a claimant has an easier time getting VA merits review of the claim based on evidence submitted through one of the Board lanes than through the supplemental claim option. This also means that we must reject the Secretary's argument that the option of a supplemental claim means the Board's failure to give Mr. Williams a chance to submit evidence is harmless.

Whether in the hearing or evidence submission lanes, all Mr. Williams had to do to get the Board to decide his claim based on his evidence was submit it to the Board. But with a supplemental claim, he would first need to convince the AOJ that the evidence was new and relevant. That's a higher burden. Thus, the Board's error was not harmless. And so, we will set

8

aside and remand the Board's denial of a rating above 10% for cervical spine strain so that Mr. Williams will have the full opportunity to submit evidence to the Board.

Mr. Williams has focused his argument on the 60 days found in § 20.202(c) so we will order that the Board must give Mr. Williams 60 days from when it informs him that his appeal has been returned to the Board to switch his choice of docket. *See* 38 U.S.C. § 7252(a) (giving this Court the "power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate").

### E. Remaining Matters

Because we are remanding Mr. William's appeal and because he will have full opportunity to submit additional evidence and argument, we see no reason to address remaining arguments that would lead to no broader remedy. *See Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order) ("[I]f the proper remedy is a remand, there is no need to analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand."). Technically, Mr. Williams argues that a March 2019 VA examination is inadequate (although this argument is styled as a reasons or bases argument). But he does not ask us for a new examination. And we note that Mr. Williams doesn't appear to have made any argument about the adequacy of the examination before VA; this despite being represented by counsel.[4] Often, the failure of a represented party to raise an issue can lead us to find the issue waived. *Morris v. McDonough*, 40 F.4th 1359, 1362 (Fed. Cir. 2022) (*citing Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000)). Here, the case is returning to the Board and VA will have full opportunity to address and resolve Mr. Williams's arguments. In short, we think it best to let the Board address Mr. Williams's remaining arguments; that way, VA has full opportunity to consider his points and Mr. Williams can still prevail based on these arguments before VA.

As a final matter, we note that in our previous decision we denied Mr. Williams's motions for oral argument and for initial panel consideration. Since we vacated that decision, those motions are back in play. Still, we will deny them again. We don't think this case would benefit from oral argument. And Mr. Williams's request for initial panel review is now moot. As for Mr. Williams's

---

[4] From the record, it looks like Mr. Williams didn't make any arguments about his spine strain before the Board, but we recognize the record before us may be incomplete.

motion for reconsideration or panel review, as we've already said, we agree that reconsideration is appropriate and that this case warrants panel review. In short, that motion is granted.

### III. CONCLUSION

Based on the above, the July 14, 2023, motion for reconsideration is granted and the Court's June 23, 2023, decision is WITHDRAWN. The November 7, 2022, motions for oral argument and for initial review by panel are denied. Finally, the Board's July 16, 2021, decision is VACATED, and the matter is REMANDED for further proceedings consistent with this decision.