# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-5064

MILLARD W. ADAMS, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 13, 2025                                Decided July 8, 2025)

*John D. Niles*, of Topeka, Kansas, for the appellant.

*Gilles Sadak*, with whom *Richard J. Hipolit*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, GREENBERG, and JAQUITH, *Judges*.

PIETSCH, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed an opinion concurring in part and dissenting in part.

PIETSCH, *Judge*: In 2017, VA's General Counsel (G.C.) issued a precedent opinion that prohibits service connection for obesity, both as directly related to service and as secondary to a service-connected disability, finding that it is neither a disability nor a disease for purposes of 38 U.S.C. § 1110 and 38 C.F.R. § 3.310. *See* VA Gen. Coun. Prec. 1-2017, at 1-7 (Jan. 6, 2017) [hereinafter G.C. Prec. 1-2017]. On May 4, 2023, the Board of Veterans' Appeals (Board) cited the G.C. opinion to deny appellant Millard W. Adams's claim for service connection for obesity, including as secondary to service-connected post-traumatic stress disorder (PTSD). *See* Record (R.) at 5-13.

In this timely appeal over which the Court has jurisdiction, *see* 38 U.S.C. §§ 7272(a), 7266(a), Mr. Adams challenges the G.C.'s interpretation of section 1110 as excluding obesity from those conditions that may be compensated by VA. For the reasons that follow, we hold that the G.C. opinion's finding that obesity is not a disability for purposes of section 1110 is not a persuasive interpretation of the statute, but we also hold that the G.C.'s finding that obesity is not a "disease" for purposes of section 1110 *is* a persuasive interpretation of the statute. Because direct

service connection requires that a disability result from a "disease" or an "injury" incurred in the line of duty, we decline to disturb the part of the G.C. opinion that prohibits service connection for obesity as directly related to service. Yet in the context of secondary service connection, whether a section 1110 disability is itself a "disease" or an "injury" incurred in the line of duty is irrelevant. *See Spicer v. McDonough*, 61 F.4th 1360, 1364 (Fed. Cir. 2023); *Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (en banc).

Thus, we hold that the G.C. opinion's finding that obesity is not a "disease" for purposes of secondary service connection is an impermissible interpretation of the statute. We will vacate the part of the Board's decision that denied service connection for obesity as secondary to service-connected PTSD, and we will remand this matter to the Board for further proceedings.

The May 2023 Board decision also dismissed a claim for a disability rating higher than 20% for diabetes mellitus, as well as claims for earlier effective dates for the awards of service connection for diabetic neuropathy of the right and left lower extremities. *See* R. at 9-10. Mr. Adams does not challenge the Board's dismissal of those claims; thus, the Court deems those issues abandoned and will dismiss those appeals. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

The Board decision also remanded the issue of entitlement to service connection for obstructive sleep apnea as secondary to PTSD. *See* R. at 10-13. Thus, that matter is not presently before the Court. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order) (stating that a Board remand is not a final decision over which this Court has jurisdiction).

## I. BACKGROUND
### A. Law and Regulations

Section 1110 provides VA compensation "[f]or disability resulting from personal injury suffered or disease contracted in the line of duty." 38 U.S.C. § 1110. In the context of secondary service connection, "[section] 1110 plainly requires compensation when a service-connected disease or injury is a but-for cause of a present-day disability," including the "natural progression of a condition not caused by a service-connected injury or disease, but that nonetheless would have been less severe were it not for the service-connected disability." *Spicer*, 61 F.4th at 1364.

VA's current policy is to prohibit service connection for obesity on the basis that it is not a disability, disease, or injury contemplated in section 1110. *See* G.C. Prec. 1-2017, at 1-7. The G.C.

2

opinion observes that the term "disease" is not defined in title 38 and cites gap-filling authority delegated to the Secretary by Congress to determine what conditions qualify as "diseases" for purposes of section 1110. *Id*. at 3 (first citing *O'Bryan v. McDonald*, 771 F.3d 1376, 1378 (Fed. Cir. 2014); and then citing *Terry v. Principi*, 340 F.3d 1378, 1383 (Fed. Cir. 2003)). The opinion discusses VA's history of defining "disease" as it was defined in the 26th edition of *Dorland's Illustrated Medical Dictionary*–"any deviation from or interruption of the normal structure or function of any part, organ, or system of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown." *Id*. (first citing VA Gen. Coun. Prec. 82-90 (Jul. 18, 1990); and then citing VA Gen. Coun. Prec. 2-93 (Jan. 13, 1993)). G.C. Prec. 1-2017 also discusses medical treatises that consider whether obesity is a "disease," and G.C. Prec. 1-2017 finds no consensus among medical authorities that obesity satisfies the definition of "disease." *Id*. at 4-6. The G.C. opinion notes that some of these treatises state that "research has not yet found a true causal connection between obesity and morbidity and/or mortality." *Id*. at 6.

The G.C. opinion also finds that obesity is not a "disability" for purposes of section 1110. *Id*. at 7. The opinion defines "disability" as the average impairment of earning capacity and finds that obesity is generally an excess accumulation of body fat and does not usually result in impairment. *Id*. But the opinion acknowledges evidence that "severe obesity, i.e., BMI [body mass index] greater than 40, impairs physical and social function." *Id*.

Addressing secondary service connection specifically, the G.C. opinion finds that obesity is not a disability for purposes of 38 C.F.R. § 3.310(a) because VA has not included obesity on the rating schedule. *Id*. (citing 38 C.F.R. § 3.310(a) (2016)). Citing the medical treatises and lack of medical consensus on whether obesity is a "disease," the G.C. opinion then finds that obesity is neither a "disease" nor an "injury" for purposes of § 3.310(a) and (b).[1] *Id*.

One year after the G.C. issued G.C. Prec. 1-2017, the Federal Circuit issued its decision in *Saunders v. Wilkie*, holding that the "plain language of [section] 1110," as well as dictionary definitions of "disability," compelled the conclusion that "'disability' in section 1110 refers to the functional impairment of earning capacity, not the underlying cause of said disability." 886 F.3d 1356, 1361 (Fed. Cir. 2018), *rev'g Saunders v. McDonald*, No. 15-0975, 2016 WL 3002862 (Vet.

---

[1] The Federal Circuit has since determined that § 3.310(b) is "unlawful as inconsistent with [section] 1110." *Spicer*, 61 F.4th at 1366.

3

App. May 25, 2016) (mem. dec.), *aff'd*, 2016 WL 4258493 (Vet. App. Aug. 12, 2016) (affirmed by a three-judge panel). *Saunders v. Wilkie* concluded that pain can be compensated by VA even in the absence of an underlying diagnosis, if the pain results in functional impairment and meets the two other requirements for service connection—specifically, that the injury or disease be incurred in the line of duty, and that there be a nexus between the in-service event and the current disability. 886 F.3d at 1368-69.

### B. Procedural History

The facts are not in dispute. Mr. Adams served in the U.S. Air Force from October 1966 to September 1970. R. at 14,868. He filed a claim for service connection for obesity as secondary to his service-connected PTSD in March 2016, R. at 12,496-506, submitting a November 2009 article that links cortisol, a hormone whose levels are said to increase with stress, with weight gain. R. at 12,478-81. VA denied Mr. Adams's claim in April 2016. R. at 12,354.

Mr. Adams filed a supplemental claim for service connection for obesity in December 2019. R. at 7585-86. Records obtained in connection with this claim include an August 2016 VA treatment record states that Mr. Adams has "core weakness and postural changes due to obesity." R. at 3284. In a January 2020 rating decision, VA determined that Mr. Adams had not submitted new and relevant evidence to reopen his finally adjudicated March 2016 claim.[2] R. at 6906-13. In August 2020, Mr. Adams filed a VA Form 10182 to appeal that decision, electing to have a hearing before the Board. R. at 6887. A July 2022 VA treatment record describes Mr. Adams as "obese, uses rollator." R. at 144. Mr. Adams testified at a hearing before the Board in January 2023. R. at 2565.

The Board issued the decision on appeal in May 2023. R. at 5-13. It found that "obesity is not a disease or disability for VA purposes and is not subject to service connection." R. at 9 (citing *Marcelino v. Shulkin*, 29 Vet.App. 155, 158 (2018)). The Board then noted the G.C. opinion's conclusion that "obesity per se is not a disease or injury for purposes of 38 U.S.C. §§ 1110 and 1131, and, therefore, may not be service connected on a direct or secondary basis." R. at 9. The Board also characterized the G.C. opinion as finding that "particularities of body type, such as being overweight or underweight, do not, of themselves, constitute disease or disability subject to

---

[2] VA issued another rating decision in March 2020 because the January 2020 rating decision did not consider certain laws and regulations that applied to Mr. Adams's claim. R. at 6907. But VA's finding that Mr. Adams had not submitted new and relevant evidence remained unchanged. *Id*.

4

service connection." *Id*. Additionally, the Board found that the record did not show that Mr. Adams's obesity functionally impaired earning capacity, and though Mr. Adams was obese, his "obesity is not considered a disease or injury." Thus, the Board concluded, service connection for obesity as either directly related to service or as secondary to a service-connected disability was not warranted.

## II. PARTIES' ARGUMENTS

### A. Appellant's Arguments

Mr. Adams argues that G.C. Prec. 1-2017's general prohibition on service connection for obesity on both direct and secondary bases is invalid in light of *Saunders*. First, Mr. Adams argues, *Saunders* invalidates the G.C. opinion's reliance on gap-filling authority to determine the sorts of conditions that qualify as a "disease" or an "injury" for purposes of section 1110. Appellant's Brief (Br.) at 12. Mr. Adams notes that in *Saunders*, the Federal Circuit arrived at its conclusion by characterizing the word "disability" as unambiguous; thus, he argues, there is no gap to fill. *Id*. He distinguishes *O'Bryan* by arguing that *O'Bryan* is limited only to those disabilities that the Secretary "has by regulation interpreted not to constitute a section 1110 disability, disease, or injury—such as congenital or developmental defects." *Id*.

Second, Mr. Adams challenges the G.C. opinion's reliance on the absence of obesity from the rating schedule. *Id*. at 13 (citing G.C. Prec. 1-2017, at 5-6). Mr. Adams notes that pain is also not listed in the rating schedule, but that *Saunders* still found that pain can be a disability under section 1110 if it causes functional impairment. *Id*. (citing *Saunders*, 886 F.3d at 1368). Thus, in his view, *Saunders* "reflects the understanding that has always been correct: whether [the rating schedule] lists a particular condition does not affect whether that condition is service-connectible." *Id*. Instead, he argues, the question is simply whether a disability results in functional impairment. *Id*.

Mr. Adams acknowledges G.C. Prec. 1-2017's finding that obesity is not a disease or injury for purposes of section 1110, but he argues that under *Saunders*, "the operative language for service connection is 'disability' rather than its cause." *Id*. (citing *Saunders*, 886 F.3d at 1362-63). Thus, Mr. Adams asserts, anything causing functional impairment can be service connected, and "whether a condition such as obesity is itself a 'disease' simply does not matter." *Id*. at 13-14.

5

Third, Mr. Adams argues that the G.C. opinion is invalid because to support its conclusion that obesity is not a "disease" for purposes of section 1110, the G.C. opinion relies on medical literature stating that obesity does not cause "morbidity and/or mortality" in all patients. *Id*. at 14 (citing G.C. Prec. 1-2017, at 6-7). Mr. Adams argues that under *Saunders*, the only question is whether a disability causes functional impairment, not whether it results in morbidity or mortality. *Id*.

Mr. Adams finds additional support for his position in *Spicer*, because that decision affirms that "disability" for purposes of section 1110 means "functional impairment." *Id*. (citing 61 F.4th 1363-64). He also asserts that *Spicer* affirms that *Saunders* found section 1110 unambiguous. *Id*. (citing *Spicer*, 61 F.4th at 1363). Additionally, he asserts that *Spicer* holds that claims for secondary service connection, such as the claim under consideration, arise under section 1110. *Id*. (citing *Spicer*, 61 F.4th at 1366). In Mr. Adams's view, *Spicer* confirms that "[section] 1110 is unambiguous and leaves no gap" for VA to fill as to whether obesity can be service connected. *Id*. All that matters is whether obesity results in functional impairment. *Id*.

Mr. Adams asserts that the Board's error was prejudicial because the record includes evidence that his obesity causes functional impairment. *Id*. at 15-18. Mr. Adams points to a VA treatment record describing "core weakness and postural changes due to obesity," with "symptoms more pronounced with trunk extension." *Id*. at 16 (citing R. at 144). He also argues that symptoms documented in clinical notes, such as "fatigability, weakness, and … postural changes … are all hallmarks of disability" that result from obesity. *Id*. (citing 38 C.F.R. §§ 4.1, 4.3, 4.45 (2024)).

## B. Secretary's Arguments

The Secretary asserts that VA has the authority to determine what it will compensate as a service-connected disability under 38 U.S.C. § 1155, authorizing VA to create a rating schedule, and under 38 U.S.C. § 501(a), authorizing the Secretary to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department." Secretary's Br. at 5-6. Because of this authority, the Secretary argues, VA's "determinations as to what disabilities it includes in the rating schedule [are] precluded from judicial review." *Id*. at 6 (first citing *Wanner v. Principi*, 370 F.3d 1124, 1131 (Fed. Cir. 2004); and then citing *Palczewski v. Nicholson*, 21 Vet.App. 174, 179-80 (2007) (observing that in reviewing a regulation that defines when hearing loss may be a disability, the Court must review the regulation with "substantial deference" to the Secretary's interpretation)). The Secretary then appears to challenge this Court's

6

jurisdiction to consider this matter, pointing out that in *Marcelino*, this Court found that "'reviewing what should be considered a disability is no different from direct review of the content of the rating schedule," a task that the Court has no authority to engage in. *Id*. at 7 (quoting *Marcelino*, 29 Vet.App. at 158).

The Secretary also argues that *Saunders* is distinguishable because it does not mention obesity, instead finding that *pain* can be a disability under section 1110 if it causes functional impairment.[3] *Id*. at 8. Moreover, the Secretary asserts, Mr. Adams has not shown that his obesity causes pain that results in functional impairment. *Id*. at 9. The Secretary dismisses as "lay hypothesizing" Mr. Adams's argument that symptoms such as fatigability, weakness, and postural changes are hallmarks of disability, and the Secretary contends that the Board was not obligated to specifically address this evidence. *Id*. at 9-10. And even if *Saunders* does apply, the Secretary argues, the G.C. opinion "specifically found based on a review of scientific research, that obesity does not produce impairment resulting in reductions of earning capacity." *Id*. at 11. The Secretary also asserts that Mr. Adams relies on *Spicer* only because *Spicer* cites *Saunders* with approval. *Id*. Additionally, the Secretary argues, VA properly exercised its gap-filling authority. *Id*. at 12.

## C. Appellant's Reply to the Secretary

In his reply brief, Mr. Adams disagrees with the Secretary that *Palczewski* requires this Court to afford substantial deference to his determination as to what constitutes a disability for purposes of section 1110. Reply Br. at 9. First, Mr. Adams characterizes *Saunders* as holding that section 1110 is not ambiguous and he argues that "*Palczewski* thus does not survive *Saunders*." *Id*. Second, he points to the U.S. Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, and notes that its holding significantly affects the deference that courts are to afford agency determinations. *Id*. (citing *Loper Bright*, 603 U.S. 369, 412-13 (2024)). Thus, Mr. Adams argues, *Palczewski* deference is "no longer tenable." *Id*.

At oral argument, Mr. Adams responded to the Secretary's argument that the G.C. opinion determined that obesity does not result in the functional impairment of earning capacity: Mr. Adams noted that the opinion does, in fact, appear to acknowledge that obesity can functionally

---

[3] At oral argument, the Secretary acknowledged authority holding that *Saunders* does not apply only to pain. Oral Argument (OA) at 33:45-34:57, *Adams v. Collins*, U.S. Vet. App. No. 23-5064 (argued Jan. 13, 2025), http://www.uscourts.cavc.gov/oral.arguments.audio.php (discussing *Martinez-Bodon v. Wilkie*, 32 Vet.App. 393, 398 (2020) ("[W]e hold that *Saunders* is not limited to pain"), *aff'd sub nom. Martinez-Bodon v. McDonough*, 28 F.4th 1241 (Fed. Cir. 2022)). In light of this concession, the Court will not discuss this argument further.

7

impair certain people who suffer from "severe" obesity, defined as BMI of 40 or greater. G.C. Prec. 1-2017, at 6. The Secretary responded that the G.C. opinion describes "obesity as an intermediate step" to service connection, allowing compensation for disabilities for which obesity is a link in the causal chain. OA at 35:37-37:46. The Secretary asserted that this view is consistent with VA's position that obesity is merely the "excess accumulation of body fat" that can impair other body functions, but that obesity does not by itself result in the functional impairment of earning capacity. *Id.*

### III. ANALYSIS

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability, (2) an in-service incurrence or aggravation of a disease or injury, and (3) a nexus between the claimed in-service disease or injury and the present disability. 38 U.S.C § 1110; *see Shedden v. Principi*, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). We reiterate that the G.C. opinion finds that obesity is neither a "disability" nor a "disease" for purposes of section 1110, and thus that service connection for obesity cannot be established.

Under 38 U.S.C. § 7104(c), the precedent opinions of the VA General Counsel are binding on the Board. Thus, in Mr. Adams's appeal, the Board was required to follow G.C. Prec. 1-2017. But unlike the Board, this Court is not bound by VA General Counsel precedent opinions. *See* 38 U.S.C. § 7261(a)(3). Though this Court generally reviews VA's statutory interpretation de novo, *see DeBeaord v. Principi*, 18 Vet.App. 357, 363 (2004), we recognize that opinions of the General Counsel "constitute a body of experience and informed judgment," *Osman v. Peake*, 22 Vet.App. 252, 256 (2008). VA's interpretation of a statute in a G.C. opinion is entitled to respect to the extent that the interpretation has "'the power to persuade.'" *Wanless v. Shinseki*, 23 Vet.App. 143, 150 (2009) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The weight the Court affords General Counsel opinions "depends heavily on their thoroughness, reasoning, and consistency with earlier and later pronouncements on the specific issue." *Osman*, 22 Vet.App. at 256 (citing *Skidmore*, 323 U.S. at 140).

### A. The Court's Jurisdiction to Review the Question Presented

The Secretary noted in his brief that VA has the authority to determine the content of the rating schedule, and that this Court does not have the authority to review the content of the rating schedule. *Id.* at 5-6 (first citing *Wanner*, 370 F.3d at 1131; and then citing *Palczewski*, 21 Vet.App.

at 179-80). He also points to this Court's holding in *Marcelino*, finding that an argument that obesity should be considered a disability under the rating schedule is not one that can be reviewed by this Court. *Id*. at 7 (citing *Marcelino*, 29 Vet.App. at 157-58).

The Secretary's argument fails to account for the Federal Circuit's decision in *Larson v. McDonough*, holding that asking whether obesity can be a disability for purposes of section 1110 is *not* a request for the Court to review the rating schedule but is instead a request to establish service connection under that statute. 10 F.4th 1325, 1329 (Fed. Cir. 2021). *Larson* held that such questions are controlled by *Saunders*, rather than *Wanner*, and *Larson* reversed a determination by this Court that we lacked jurisdiction to review the Board's determination that obesity does not constitute a disability for purposes of section 1110. *Id*. at 1329-30.

Mr. Adams does not ask this Court to review the content of the rating schedule; instead, he challenges the G.C. opinion's finding that obesity is not a disability for purposes of section 1110. Thus, this matter is controlled by *Saunders*, rather than *Wanner*. *See Larson*, 10 F.4th at 1329-30. The Court is therefore satisfied that we may review the question that Mr. Adams has presented to us, and we reject the Secretary's arguments to the contrary.

### B. The G.C. Opinion's Finding That Obesity Is Not a Disability

We turn now to the first question before us: In G.C. Prec. 1-2017, did the G.C., for purposes of VA compensation, persuasively interpret section 1110 as excluding obesity from those conditions that may be considered "disabilities." *See Wanless*, 23 Vet.App. at 150. We find that the G.C. did not persuasively interpret the statute.

"As in any case of statutory construction, our analysis begins with the language of the statute." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). *Saunders*, which holds that "disability" in the context of section 1110 means "functional impairment of earning capacity," extensively analyzes "disability" for purposes of section 1110 and guides our analysis here. *Saunders*, 886 F.3d at 1363. The G.C. opinion, issued before *Saunders*, defines "disability" for purposes of section 1110 as "'average impairments of earning capacity resulting from such injuries in civil occupations.'" G.C. Prec. 1-2017, at 7 (quoting 38 U.S.C. § 1155). The Court discerns no material difference between the G.C. opinion's definition of "disability" as "average impairment of earning capacity" and *Saunders*'s definition of "disability" as "functional impairment of earning capacity." Notably, *Saunders* cites section 1155's definition of "disability" as "average impairment of earning capacity" as an indication that VA's regulations support its definition of "disability" as

9

referring to "functional impairment." *Saunders*, 886 F.3d at 1362. Thus, the G.C. opinion's definition of "disability" is consistent with *Saunders*, and is therefore a permissible interpretation.

But the G.C. opinion goes on to find that obesity does not meet the definition of "disability" because obesity does not impair most obese individuals. G.C. Prec. 1-2017, at 7. The opinion acknowledges "evidence that severe obesity, i.e., BMI of greater than 40, impairs physical and social function." *Id*. The opinion then describes obesity as "excess accumulation of body fat" and cites medical studies finding that most obese people are not impaired as a result of their obesity. *Id*. Thus, the opinion concludes, VA "need not consider obesity itself as meeting the criteria to be considered a 'disability' for purposes of relevant statutes and regulations." *Id*.

In its opinion the G.C. does not attempt to reconcile the apparent contradiction between acknowledging that obesity can physically and socially impair some people, and concluding that obesity does not meet the criteria to be considered a disability. It appears that the opinion interprets section 1110 as excluding obesity from the conditions that may be considered a disability under that statute, just because *some*, but not *all*, obese people are not functionally impaired by their obesity. This interpretation does not comport with *Saunders*'s definition of "disability." Nothing in *Saunders*, or in any subsequent authority that addresses *Saunders*, stands for the proposition that a condition is not disability for purposes of section 1110 when only some, but not all, people with that condition are impaired by it.

Because the G.C. opinion does not reconcile its contradictory findings or comport with *Saunders*'s definition of "disability," we reject the opinion's interpretation of section 1110 as excluding obesity from the conditions that may be considered a "disability." *See Theiss v. Principi*, 18 Vet.App. 204, 211 (2004) (rejecting a G.C. opinion's definition of a term for "faulty reasoning"). We hold that obesity may be a disability for purposes of section 1110 if it results in the functional impairment of earning capacity, *see Saunders*, 886 F.3d at 1362-63, and that deciding whether a claimant's obesity causes functional impairment requires an "individualized assessment" of the "degree of impairment" caused by a claimant's obesity, *see Wait v. Wilkie*, 33 Vet.App. 8, 16 (2020).

### C. The G.C. Opinion's Finding that Obesity Is Not a Disease
#### i. Reliance on VA's Gap-Filling Authority

Before discussing the persuasive value of the G.C.'s opinion that obesity is not a disease for purposes of section 1110 and § 3.310(a) and (b), we must first address Mr. Adams's challenge

to VA's authority to determine whether a condition is a "disease" for purposes of section 1110. *See* Appellant's Br. at 12. The G.C. opinion notes that the word "disease" is not defined in section 1110 and observes that Congress delegated to VA the authority to fill the gap as to the sorts of conditions that may be considered a disease under that statute. G.C. Prec. 1-2017, at 3. Mr. Adams challenges VA's reliance on gap-filling authority to ascertain whether obesity is a disease for purposes of section 1110. Appellant's Br. at 12. He argues that because *Saunders* found that the "disability" in section 1110 is unambiguous, there is "no pertinent gap for the Secretary to fill." *Id*. He also characterizes *Spicer* as holding that section 1110 is unambiguous because *Spicer* cites *Saunders* with approval. *Id*. at 14.

The Court is not persuaded. The G.C. opinion cited gap-filling authority to ascertain whether obesity is a *disease*, not whether it is a *disability* for purposes of section 1110. *See* G.C. Prec. 1-2017, at 3. Mr. Adams does not explain how *Saunders*'s analysis of the word "disability," or *Spicer*'s citation to that part of *Saunders*, has any bearing on VA's authority to fill the statute's gap in defining "disease." Mr. Adams appears to believe that because *Saunders* interpreted the word "disability" as unambiguous, *see Saunders*, 886 F.3d at 1362, then *all* of section 1110 is unambiguous.

This reading of *Saunders* is far too broad. *Saunders* is concerned only with the definition of "disability"; it does not concern "disease" or "injury." In fact, in *Saunders* the Federal Circuit expressly rejected authority this Court had relied on in deciding Ms. Saunders's appeal by finding that the authority "reads out the distinction Congress made in section 1110 between the requirement for a disability and the requirement for in-service incurrence or aggravation of a disease or injury." *Id*. at 1366 (citing *Sanchez-Benitez v. West* (*Sanchez-Benitez I*), 13 Vet.App. 282, 285 (1999)). *Saunders* notes further that reading out the requirement for a disease or injury "eviscerates the nexus requirement" and is therefore "illogical." *Id*.

Our reading of *Saunders* is also consistent with this Court's decision in *Wait*, characterizing *Saunders* as drawing "a distinction between the term 'disability' and 'disease or injury.'" 33 Vet.App. at 14. Thus, the Court is not convinced that *Saunders*'s interpretation of "disability" in section 1110 prevents the Secretary from exercising gap-filling authority to determine the conditions that may be a "disease" or an "injury" for purposes of section 1110.

11

### ii. Direct Service Connection

The G.C. opinion notes that some medical authorities, including the American Medical Association (AMA), and other Federal agencies have described obesity as a "disease." G.C. Prec. 1-2017, at 4. Yet the opinion goes on to find that "these statements were made for a variety of purposes other than disability compensation," and that these statements "do not compel the same result by VA." *Id*. The opinion then notes that there is no apparent consensus among medical authorities that obesity is a disease, and the opinion points out disagreement within the AMA that obesity is appropriately characterized as a disease. *Id*. Additionally, the opinion finds, classifying obesity as a disease "for purposes of promoting understanding, prevention, and treatment of conditions that jeopardize a person's health" does not also mean that obesity should also be classified as a disease for purposes of VA compensation. *Id*. at 5.

Critically, Mr. Adams does not challenge any of those findings. Instead, he argues that "whether a condition such as obesity is itself a 'disease' simply does not matter." Appellant's Br. at 14. In his view, all that matters is whether a condition functionally impairs earning capacity. *Id*. at 13-14. If so, he believes, the condition should be compensated under section 1110. *Id*.

In the direct-service-connection context, Mr. Adams asks the Court to effectively read out of section 1110 its requirement that a disability—i.e., a condition resulting in functional impairment of earning capacity—result from a *disease or injury* that is contracted in the line of duty. This we cannot do. The Court must give effect to all terms and avoid rendering any "'inoperative or superfluous, void or insignificant.'" *Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006) (quoting 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46:06 (6th ed. 2000)), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007); *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (stating that the "canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"). Additionally, the Federal Circuit has held that "[s]ection[] 1110 … make[s] it clear that if a disability cannot be attributed to an 'injury' or a 'disease' incurred or aggravated in the line of duty, *the disability is not compensable*." *Terry*, 340 F.3d at 1382 (emphasis added). Thus, in the context of direct service connection, Mr. Adams has not presented the Court with a valid reason to invalidate the Secretary's interpretation of section 1110 as excluding obesity from the conditions that may be considered a "disease."

12

And in the absence of such an argument, the Court finds that the Secretary's interpretation of section 1110 as excluding obesity from the conditions that may be considered a "disease" is persuasive and entitled to respect. *See Wanless*, 23 Vet.App. at 150. The interpretation is supported by references to literature showing that there is no medical consensus that obesity should be classified as a disease,[4] and Mr. Adams does not challenge the G.C. opinion's reliance on such literature. Moreover, the G.C. opinion's interpretation is not inconsistent with any other position taken by the Secretary on the question of whether obesity is properly classified as a "disease," and the Secretary has the authority to fill the gap in section 1110 by determining which conditions may be considered a disease for purposes of that statute. *See Skidmore*, 323 U.S. at 140; *see also Wanless*, 23 Vet.App. at 150-51 (holding that the VA G.C. opinion interpreting section 5313 was entitled to respect where the interpretation was accompanied by supporting rationale and not inconsistent with previous VA positions); *Osman*, 22 Vet.App. at 259-60 (rejecting VA G.C. interpretation that was inconsistent with a prior interpretation).

### iii. Secondary Service Connection

But in the context of secondary service connection, Mr. Adams is correct that whether obesity is itself a disease or an injury for purposes of section 1110 "simply does not matter." Appellant's Br. at 14. This Court explained in *Allen* that

> the term "disability" as used in [section] 1110 refers to impairment of earning capacity, and . . . such definition mandates that any additional impairment of earning capacity resulting from an already service-connected condition, *regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition,* shall be compensated.

7 Vet.App. at 448 (1995) (emphasis added). Additionally, *Spicer* holds that "[section] 1110 plainly requires compensation when a service-connected disease or injury is a but-for cause of a present-day disability," including additional disability that results from "the natural progression of a condition not caused by a service-connected injury or disease, but that nonetheless would have

---

[4] Our dissenting colleague disagrees that the G.C. opinion's findings as to this medical literature are persuasive, and he presents a litany of more recent medical literature, as well as findings by other Federal agencies and a recent executive order, all describing obesity as a disease. *See infra* at 21-22. But whether the Court can take judicial notice of this extrarecord evidence is an open question. *See Euzebio v. McDonough*, 989 F.3d 1305, 1323 (Fed. Cir. 2021). It is important to note again that Mr. Adams himself does not challenge the G.C. opinion's reliance on such literature, and we do not believe it is prudent to consider a legal theory that was not advanced by the appellant when such consideration requires us to rely on evidence not presented to us. *See Davis v. United States*, 512 U.S. 452, 464 (1994) (Scalia, J., concurring) (observing that "refusal to consider arguments not raised is a sound prudential practice," but that "there are times when prudence dictates the contrary").

been less severe were it not for the service connected disability." 61 F.4th at 1364. Thus, *Allen* and *Spicer* clarify that in the context of secondary service connection, whether a condition such as obesity is itself a "disease" or an "injury" for purposes of section 1110 is irrelevant. All that is required to establish entitlement to secondary service connection is evidence that a condition results in a "disability," defined as functional impairment of earning capacity, and a "but-for" relationship between the disability and the service-connected disease or injury. *See Spicer*, 61 F.4th at 1364. In the context of secondary service connection, the requirement in section 1110 that a "disease or injury" result from the line of duty has already been fulfilled by virtue of the award of service connection for the condition that caused the additional disability.

Before the Federal Circuit's decision in *Spicer*, secondary service connection was considered a product of regulation, rather than statute. *See Frost v. Shulkin*, 29 Vet.App. 131, 137 (2017) (observing that "[s]secondary service connection for VA benefit purposes is not addressed in any statute"). For that reason, the G.C. opinion addresses whether a disability can be a "disease" for purposes of secondary service connection in the context of 38 C.F.R. § 3.310(a) and (b). *See* G.C. Prec. 1-2017, at 7. Thus, we must assess the level of deference to afford the Agency's interpretation of the regulation. *See Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1364 (Fed. Cir. 2005) (holding that an agency's interpretation of its own regulations is entitled to broad deference unless "'it is plainly erroneous or inconsistent with the regulation'" (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945))). "[C]ourts should defer to an agency's interpretation of its own ambiguous regulation so long as that interpretation is not inconsistent with the language of the regulation or otherwise plainly erroneous and represents the agency's considered view on the matter." *Mulder v. Gibson*, 27 Vet.App. 10, 16 (2014) (citing *Smith v. Nicholson*, 451 F.3d 1344, 1349 (Fed. Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997))).

Referring to medical treatises and other evidence the G.C. opinion relied on to find that obesity is not a disease for purposes of section 1110, which the opinion calls "the reasons noted above," the G.C. finds that obesity is not a disease for purposes of § 3.310(a). *Id*. We will not defer to the opinion's interpretation because it is inconsistent with the language of the regulation. The regulation provides for compensation for disabilities that are due to a *service-connected* disease or injury. *See* 38 C.F.R. § 3.310(a). In such situations, the veteran is required only to establish that his or her condition meets the section 1110 definition of "disability," and that but-for the service-

14

connected disease or injury, the veteran would not have the disability. *See Spicer*, 61 F.4th at 1364. The regulation contains no requirement that the disability also be a "disease" or an "injury" for purposes of section 1110. The opinion's brief finding that obesity is not a disease "[f]or the reasons noted above" fails to account for the fact that in the context of secondary service connection, a "disease" refers to a condition that has already been found to be related to service. *See* G.C. Prec. 1-2017, at 7. The Court cannot find that this arbitrary and dismissive finding "'reflect[s] the agency's fair and considered judgment on the matter in question.'" *Cathedral Candle Co.*, 400 F.3d at 1364 (quoting *Auer*, 519 U.S. at 462). As a result, the G.C. opinion's interpretation of § 3.310(a) is "unworthy of deference." *See Auer*, 519 U.S. at 462.

The G.C. opinion also finds that obesity is not a disease for the purposes of §3.310(b), *see* G.C. Prec. 1-2017, at 7; yet in *Spicer*, the Federal Circuit held that §3.310(b) is "unlawful as inconsistent with [section] 1110." *Spicer*, 61 F.4th at 1366. We therefore reject the G.C. opinion's finding that obesity is not a disease for the purposes of secondary service connection by aggravation, because the finding is inconsistent with *Spicer*.

### D. Application to Mr. Adams's Appeal

Before the Board, Mr. Adams argued that his obesity is secondary to his service-connected PTSD. R. at 8. The Board found the record devoid of any evidence that Mr. Adams's obesity resulted in the functional impairment of earning capacity. R. at 9. Mr. Adams argues that the Board overlooked evidence that his obesity does, in fact, result in functional impairment of earning capacity. Appellant's Br. at 16. He points specifically to the August 2016 VA treatment record finding that he has "core weakness and postural changes due to obesity" that are "more pronounced with trunk extension." R. at 3284. He also characterizes the July 2022 VA treatment record describing him as "obese" and reports that he "uses rollator" as evidence of fatigability, and argues that "[f]atigability, weakness, and manifestations leading to postural changes or symptoms more pronounced on movement are all hallmarks of disability." Appellant's Br. at 16-17 (citing R. at 144).

The Board must provide a statement of its reasons or bases for its determinations that is adequate to enable an appellant to understand the precise basis for the Board's decision as well as to facilitate review in this Court. 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence

15

it finds persuasive or unpersuasive, and provide its reasons for rejecting any material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). The Court finds that the Board provided an inadequate statement of reasons or bases for finding that Mr. Adams's obesity does not result in the functional impairment of earning capacity, because it overlooked favorable material evidence—specifically, the August 2016 VA treatment record that attributes weakness and postural changes directly to Mr. Adams's obesity. *See* R. at 3284; *Caluza*, 7 Vet.App. at 506. Although the Secretary disagrees that the Board was obligated to discuss this evidence, *see* Secretary's Br. at 10-11, his post hoc rationalizations cannot make up for the Board's lack of adequate reasons or bases. *See Simmons v. Wilkie*, 30 Vet.App. 267, 277 (2018) (holding that the "Court cannot accept the Secretary's post hoc rationalizations" to cure the Board's reasons-or-bases errors). Remand is therefore warranted so that the Board can provide an adequate statement of reasons or bases for finding whether Mr. Adams's obesity results in the functional impairment of earning capacity. If the Board answers this question affirmatively, it must then make factual determinations whether Mr. Adams's service-connected PTSD is a but-for cause of his obesity. *See Spicer*, 61 F.4th at 1364.

To the extent that the Board also denied service connection for obesity on a direct basis, the Court leaves this finding, consistent with our findings above, undisturbed. *See* R. at 9. We remind the Board that "[a] remand is meant to entail a critical examination of the justification for the [Board's] decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991); *see also Andrews v. McDonough*, 34 Vet.App. 151, 161 (2021). Additionally, on remand the Board must treat this matter in an expeditious manner, in accordance with 38 U.S.C. § 7112(a).

## IV. CONCLUSION

After considering the parties' pleadings and reviewing the record, the Court VACATES the part of the Board's May 4, 2023, decision that denied service connection for obesity as secondary to service-connected PTSD, and REMANDS that matter for further proceedings consistent with this decision. The remainder of the appeal is DISMISSED.

16

JAQUITH, *Judge*, concurring in part and dissenting in part: I completely agree with the majority's holding (1) that "the G.C. opinion's finding that obesity is not a disability for purposes of section 1110 is not a persuasive interpretation of the statute," *ante* at 1; (2) "reject[ing] the G.C. opinion's finding that obesity is not a disease for the purpose of secondary service connection by aggravation," *ante* at 15; and (3) that "the Board provided an inadequate statement of reasons or bases for finding that Mr. Adams's obesity does not result in the functional impairment of earning capacity, because the Board overlooked favorable material evidence," *ante* at 16; so I agree that this matter must be remanded. But I cannot join in either the majority's deference to the General Counsel's opinion that "obesity is not a 'disease' for purposes of section 1110" or the majority's conclusion that G.C. Prec. 1-2017 "prohibits service connection for obesity as directly related to service," *ante* at 1-2. In my view, the Board's denial of both direct and secondary service connection for Mr. Adams' obesity is based on flawed analysis that fails to consider (or even mention) watershed precedential cases, so the Board's denial of both bases for service connection should be vacated and the matter remanded.

My bottom line is that the Court should vacate the Board's May 4, 2023, decision that denied service connection for obesity—both secondary and direct service connection—in accordance with the Board's unitary treatment of service connection. The Board did not address secondary and direct service connection separately. Regarding obesity, the Board's order says only that "[e]ntitlement to service connection for obesity, to include as secondary to service connected post[-]traumatic stress disorder (PTSD) is denied." R. at 5. The Board's all-encompassing conclusion of law likewise says flatly that "[t]he criteria for service connection for obesity have not been met." R. at 6. And the Board's reasons or bases for its order and conclusion assert that "[t]he general requirements for direct and secondary service connection notwithstanding, obesity is not considered a disease or disability for VA purposes and is not subject to service connection," citing only *Marcelino v. Shulkin*, 29 Vet.App. 155 (2018), and G.C. Prec. 1-2017. R. at 9. But the Board's reliance on *Marcelino* is misplaced. In that case, the Court said nothing resembling the Board's assertion, instead holding only that the Court did not "have jurisdiction to entertain the argument that obesity should be considered a disability under the rating schedule." 29 Vet.App. at 158.

The Federal Circuit decided otherwise in *Larson v. McDonough*, holding that a veteran seeking to establish service connection for obesity under section 1110 is not asking the Court to

17

invalidate or revise any portion of the rating schedule, so the Court has jurisdiction to review the Board's denial of such a claim. 10 F.4th 1325, 1329-30 (Fed. Cir. 2021). The *Larson* court also held that obesity was analogous to the pain at issue in *Saunders v. Wilkie*, which held that pain may constitute a disability under section 1110 without an identified disease or injury, because pain can constitute or cause functional impairment. *Larson*, 10 F.4th at 1329; *Saunders*, 886 F.3d 1356, 1362-68 (Fed. Cir. 2018). Here, the majority relies on *Larson* and *Saunders* but neither notes nor acts on the fact that Board did not factor either case into its decision. In short, the Board relied on a case that was wrong and ignored two cases that are of paramount importance. I agree with our distinguished colleagues who have persuasively determined in other cases that such a Board failure warrants vacating the Board decision and remanding the matter for the Board to consider *Larson* and *Saunders* in the first instance. *See Kedrowski v. McDonough*, No. 22-5633, 2024 WL 557956, at *3 (Vet. App. Feb. 13, 2024) ("[I]t remains for the Board to resolve whether *Saunders* and *Larson* undermine the continuing validity of Precedent Opinion 1-2017's conclusion that obesity is not a disability for VA compensation purposes."); *Shillingburg v. McDonough*, No. 21-3081, 2022 WL 3909054, at *3 (Vet. App. Aug. 31, 2022).

In my view, because the Board's decision addressed direct and secondary service connection together, citing *Marcelino*, the Court's remand here should require the Board to address whether *Saunders* and *Larson* undermine the continuing validity of G.C. Prec. 1-2017's categorical exclusion of obesity as a disease and disability permitting compensation. Although the G.C. opinion binds the Board, that does not mean the Board's consideration of the issues is futile. *See Wolfe v. McDonough*, 28 F.4th 1348, 1358 (Fed. Cir. 2022). The factual setting is key to making correct decisions on the law, so the Board's consideration of all of the relevant record—including the veteran's testimony that his weight increased from 125 pounds to 230 pounds while he was on active duty, R. at 2574, his testimony that his weight gain was related to his PTSD, R. at 2567-75, the objective evidence of his height (72 inches), weight (276 pounds), and BMI of 38, R. at 93, and the VA physical therapist's assessment that the veteran's chronic lower back pain was related to his "core weakness and postural changes due to obesity," R. at 3284—could be informative. Considering pertinent facts and governing law can make a difference!

G.C. Prec. 1-2017 suffers from the same shortcoming as the Board decision: G.C Prec. 1-2017 did not contemplate the holdings and analysis by the Federal Circuit in *Saunders* and *Larson*. Indeed, it would have required prescience, or at least unbiased foresight, for VA's General Counsel

18

to anticipate such future court decisions. In this case, the Court's majority concludes that G.C. Prec. 1-2017 does not comport with *Saunders*. *Ante* at 10. The majority highlights G.C. Prec. 1-2017's contradictory finding that obesity cannot constitute a disability while acknowledging that people with severe obesity are physically and socially impaired by their condition. *Ante* at 10-11. The majority rejects G.C. Prec. 1-2017's "arbitrary and dismissive finding" that obesity is not a disease for purposes of 38 C.F.R. § 3.310 as inconsistent with the language of the regulation and inconsonant with *Spicer v. McDonough*, 61 F.4th 1360, 1364 (Fed. Cir. 2023), which holds that a veteran is entitled to compensation for functional impairment resulting from service, even as only one of many causal links. *Ante* at 15.

Last year, the Supreme Court emphasized that courts must exercise their independent judgment to discern the best meaning of statutes and " may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412-13 (2024). At the same time, the Supreme Court said that "[c]areful attention to the judgment of the Executive Branch may help inform that [judicial] inquiry," *id.*, and the Court recalled that "'[t]he weight of such a judgment in a particular case'" would "'depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control,'" *id.* at 388 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). This Court has applied that *Skidmore* standard. *See Ante* at 9; *see, e.g.*, *Wanless v. Shinseki*, 23 Vet.App. 143, 150 (2009), *aff'd*, 618 F.3d 1333 (Fed. Cir. 2010). In my view, the significant shortcomings the majority has identified in G.C. Prec. 1-2017 demonstrate that G.C. Prec. 1-2017 does not have persuasive power.

G.C. Prec. 1-2017 acknowledges that although Congress left a gap in title 38 by not defining "disease," VA has not filled the gap by defining "disease" in a regulation. G.C. Prec. 1-2017, at 3. The G.C. opinion also notes that VA has, in a regulation, specifically listed defects, disorders, and deficiencies that are not diseases. *Id.*; *see* 38 C.F.R. § 3.303(c) (2024). Obesity is *not* listed (as not being a disease). G.C. Prec. 1-2017 also notes that the General Counsel had previously endorsed a medical dictionary's definition of "disease" as "any deviation from or interruption of the normal structure or function of a part, organ, or system of the body that is manifested by a characteristic symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown." *Id.* (citing *Disease*, DORLAND'S ILLUSTRATED MED. DICTIONARY 385

19

(26th ed. 1974)). That dictionary currently defines "disease" virtually identically. *See Disease*, DORLAND'S ILLUSTRATED MED. DICTIONARY 521 (33rd ed. 2020).[5] But the G.C. opinion curiously says that "[a]lthough [the General Counsel's prior] opinions cite definitions of 'disease' from various authorities, they do not interpret VA statutes or regulations as establishing a specific definition of that term." G.C. Prec. 1-2017, at 4. Importantly, the G.C. opinion neither explains how obesity does not constitute a deviation from or interruption of the normal structure or function of the body, nor endorses a different standard for assessing obesity. *Id.* Instead, the G.C. opinion says that prior General Counsel opinions "do not describe a standard for distinguishing disease from things[] like obesity," and the G.C. opinion offers unsupported assertions that it is VA's "longstanding policy" that obesity per se is not a disease, *id.* at 1, and that obesity has not traditionally been considered a disease, *id.* at 4.

There is no evidence in the G.C. opinion, the Board decision, or the record of any such tradition or policy. Just as VA has not defined "disease" by regulation, VA has not regulated whether obesity is a disease. In this case, the regional office erroneously asserted that "[o]ur regulations state: 1) Direct basis—Obesity per se is not a disease or injury for the purposes of 38 U.S.C 1110 and 38 U.S.C 1131 and therefore may not be service connected on a direct basis." R. at 7101. There was and is no such regulation, yet the Board did not address this glaring error— instead attributing the same exact words to G.C. Prec. 1-2017. R. at 9. VA has excluded from CHAMPVA[6] coverage, for survivors and dependents of certain veterans, of "[n]onsurgical treatment of obesity or morbid obesity for dietary control or weight reduction (with the exception of gastric bypass, gastric stapling, or gastroplasty procedures in connection with morbid obesity when determined to be medically necessary) including prescription medications."[7] 38 C.F.R. §

---

[5] *Black's Law Dictionary* defines "disease" as "[a] deviation from the healthy and normal functioning of the body" and "[a]ny disorder." *Disease*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[6] "CHAMPVA" is the acronym for Civilian Health and Medical Program of the Department of Veterans Affairs. CHAMPVA is a special program for survivors and dependents of certain veterans. *See* 38 C.F.R. §§ 17.270-17.279 (2024).

[7] Notably, "changes in the prevailing medical consensus towards recognizing obesity as a disease" have led the U.S. Department of Health's Centers for Medicare & Medicaid Services (CMS) to propose reinterpreting statutory exclusions to provide Medicare prescription drug benefits under Part D and Medicaid coverage of anti-obesity medications "when used for weight loss or chronic weight management for the treatment of obesity." Medicare and Medicaid Programs; Contract Year 2026 Policy and Technical Changes to the Medicare Advantage Program, Medicare Prescription Drug Benefit Program, Medicare Cost Plan Program, and Programs of All-Inclusive Care for the Elderly, 89 Fed. Reg. 99,340-01, 99,341 (Dec. 10, 2024). The CMS proposal is "based on the distinction between obesity as a disease and overweight, which is not recognized as a disease." *Id.* at 99,377. The comments to the proposed rule include one by the American College of Cardiology expressing that acknowledging that obesity is a chronic

20

17.272(a)(22) (2024). And, by regulation, obesity warrants a 30% disability rating for a veteran with Cushing's syndrome.[8] 38 C.F.R. § 4.119, Diagnostic Code 7907 (2024). Add that the G.C. opinion acknowledges that the rating schedule is not exhaustive, *see* 38 C.F.R. § 4.20 (2024), but inconsistently asserts that obesity is categorically excluded because it is unlisted.[9] G.C. Prec. 1-2017 at 6. The Secretary has not used his regulatory authority to address whether obesity is a disease—for purposes of disability compensation or otherwise—so his General Counsel's interpretation is not entitled to deference, even under the pre-*Loper* regime. *See, e.g.*, *Cook v. Snyder*, 28 Vet.App. 330, 339 (2017), *aff'd sub nom. Cook v. Wilkie*, 908 F.3d 813 (Fed. Cir. 2018).

G.C. Prec. 1-2017 does not acknowledge that since 2006, 42 U.S.C. § 3002 has included obesity as a chronic disease for purposes of Federal disease prevention and health promotion services for older Americans. 42 U.S.C. § 3002(14)(D) (added by the Americans Act Amendments of 2006, Pub.L. 109-365, sec. 101(a)(2)).

G.C. Prec. 1-2017 does acknowledge that the American Medical Association, the Social Security Administration (SSA), the National Heart, Lung & Blood Institute, the Internal Revenue Service (IRS), and the American Association of Clinical Endocrinologists have stated that obesity is a disease.[10] *Id.* Yet G.C. Prec. 1-2017 dismisses those statements as "made for a variety of purposes other than disability compensation" and says they "do not compel the same result by VA"—without explaining why, including why the medical determinations do not apply to disability compensation decisions. G.C. Prec. 1-2017 also relies heavily on two reports by AMA councils—without explaining why councils that "provide information and recommend policies" to the AMA[11] are more persuasive than the decisions the AMA actually makes after considering such information and policies. In that regard, it is noteworthy that the AMA reaffirmed its recognition

---

disease "is long overdue," and that "obesity is a multifactorial disease that significantly contributes to elevated blood pressure, dyslipidemia, and hyperglycemia, each of which are key risk factors for the development of [cardiovascular disease]." https://www.regulations.gov/comment/CMS-2024-0345-27198 (last accessed May 12, 2025).

[8] "Cushing's syndrome" is "a complex of symptoms caused by hyperadrenocorticism due either to a neoplasm of the adrenal cortex or adenohypophysis, or to excessive intake of glucocorticoids." *Cushing*, DORLAND'S ILLUSTRATED MED. DICTIONARY 1797 (33rd ed. 2020).

[9] In *Saunders*, the Federal Circuit rejected the Secretary's similar argument that without an identified condition, pain cannot be a disability under section 1110 and VA's regulations. *See* 886 F.3d at 1362-68.

[10] *See, e.g.,* Rev. Rul. 2002-19, 2002-1 C.B. 778 ("Obesity is medically accepted to be a disease in its own right."); SSR 02-1p; *Titles II and XVI: Evaluation of Obesity*, 67 Fed. Reg. 57,859-02, 57,860 (Sep. 12, 2002) (Obesity is a complex, chronic disease characterized by excessive accumulation of body fat.").

[11] *Councils–American Medical Association*, https://www.ama-assn.org/councils (last visited May 9, 2025).

of obesity as a disease in 2023.[12] Moreover, in the 8 years since G.C. Prec. 1-2017, the U.S. Centers for Disease Control and Prevention (CDC) has declared that, "Obesity is a common, serious, and costly chronic disease."[13] The World Health Organization (WHO) says that, "Obesity is a chronic complex disease defined by excessive fat deposits that can impair health."[14] The American Association of Clinical Endocrinology states that "[o]besity is a biological, preventable, and treatable disease that means a person has too much body fat."[15] And the Obesity Medicine Association defines "obesity" as a "chronic, relapsing, multi-factorial, neurobehavioral disease, wherein an increase in body fat promotes adipose tissue dysfunction and abnormal fat mass physical forces, resulting in adverse metabolic, biomechanical, and psychosocial health consequences."[16] As the Supreme Court of Washington concluded en banc: "There is an overwhelming consensus in the medical community that obesity is a disease in and of itself."[17]

Finally, Executive Order 14212, issued just a few months ago, listed obesity as a chronic disease, stating: "It shall be the policy of the Federal Government to aggressively combat the critical health challenges facing our citizens, including the rising rates of mental health disorders, obesity, diabetes, and other chronic diseases." Exec. Order No. 14212, 90 Fed. Reg. 9833, 9834 (Feb. 13, 2025).

---

[12] *Recognition of Obesity as a Disease H-440.842*, AM. MED. ASS'N, https://policysearch.ama-assn.org/policyfinder/detail/obesity?uri=®AMADoc®HOD.xml-0-3858.xml (last visited May 9, 2025) ("Our American Medical Association recognizes obesity as a disease state with multiple pathophysiological aspects requiring a range of interventions to advance obesity treatment and prevention.").

[13] *About Obesity*, U.S. CTRS. FOR DISEASE CONTROL & PREVENTION (Jan. 23, 2024), available at https://www.cdc.gov/obesity/php/about/index.html (last visited May 9, 2025). CDC is responsible for exercising the duties provided for in law "related to the investigation, detection, identification, prevention, or control of diseases or conditions to preserve and improve public health domestically." 42 U.S.C. § 242c. CDC "has an essential role in defending against and combatting public health threats." 42 U.S.C. § 247d-4. Last year, CDC announced new ICD-10-CM codes for adult and childhood obesity, effective October 1, 2024, saying that "ICD-10-CM codes are used to classify and diagnose disease processes and for disease management and billing purposes, as well as health services research." *See* https://www.cdc.gov/obesity/media/pdfs/2024/12/Adult-Partner-Promotion-Materials-ICD-10-Codes-508.pdf (last visited May 9, 2025).

[14] *Obesity and Overweight*, WORLD HEALTH ORG. (March 1, 2024), https://www.who.int/news-room/fact-sheets/detail/obesity-and-overweight (last visited May 9, 2025). The World Health Organization is a "public international organization of which the United States is a member." 8 C.F.R. § 316.20(c) (2024); *see* 22 U.S.C. § 290.

[15] *Nutrition and Obesity*, AM. ASS'N OF CLINICAL ENDOCRINOLOGY, https://www.aace.com/disease-and-conditions/nutrition-and-obesity/all-about-obesity (last visited May 11, 2025).

[16] *Why Obesity is a Disease*, OBESITY MED. ASS'N (Dec. 30, 2023), https://obesitymedicine.org/blog/why-is-obesity-a-disease/ (last visited May 11, 2025).

[17] *Taylor v. Burlington N. R.R. Holdings, Inc.*, 444 P.3d 606, 613 (Wash. 2019) (en banc).

The majority rejects the General Counsel's finding that obesity is not a disease for purposes of 38 C.F.R. § 3.310, *ante* at 14, but the majority endorses "the Secretary's interpretation of section 1110 as excluding obesity from the conditions that may be considered a 'disease' [as] persuasive and entitled to respect" because that "interpretation is supported by references to literature showing that there is no medical consensus that obesity should be classified as a disease," *ante* at 13. But the majority fails to look carefully at the Secretary's flimsy claim of no consensus, which is based on his General Counsel's rejection of the AMA's definitive conclusion that obesity is a disease in favor of the uncertain input of two subordinate councils that the medical question is a difficult one. And the majority is uninterested in the subsequent determinations by judicial, executive, legislative, and authoritative medical entities, *supra* at 21-22, because the appellant did not spell them out when he attacked G.C. Prec. 1-2017 for categorically excluding obesity from disability compensation, *ante* at 12, 13 n.4.[18] In my view, such myopic and mechanical deference fails to fulfill the Court's responsibility to provide independent judicial review, including by considering the thoroughness of the General Counsel's opinion, the validity of its reasoning, and its consistency with other reliable sources and later developments. *See Loper Bright*, 603 U.S. at 388. The Court is not limited by the specific arguments of the parties, "but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Indeed, *Loper Bright* recently reminded us that

> [j]udges have always been expected to apply their "judgment" independent of the political branches when interpreting the laws those branches enact. The Federalist No. 78, at 523. And one of those laws, the [Administrative Procedure Act], bars judges from disregarding that responsibility just because an Executive Branch agency views a statute differently.

603 U.S. at 412.

---

[18] The veteran's challenge to G.C. Prec. Op. 1-2017's categorical exclusion of obesity as a disability and a disease placed all of the General Counsel's justifications at issue, and the veteran was not silent on the inconsonance between the G.C. opinion and the conclusions of the AMA and Federal agencies that obesity is a disease. *See* Appellant's Br. at 9. Moreover, it is indisputable that AMA, CDC, WHO, the American Association of Clinical Endocrinology, the Obesity Medicine Association, CMS, the American College of Cardiology, 42 U.S.C. § 3002, Executive Order 14212, and rulings by IRS and SSA all describe obesity as a disease. Such official public references may and should be judicially noticed and considered in determining whether the General Counsel's selective reliance on medical literature is persuasive. *See Euzebio v. McDonough*, 989 F.3d 1305, 1323 (Fed. Cir. 2021) ("[T]he Veterans Court [is not precluded] from taking judicial notice of extra-record evidence that is 'generally known' or 'from sources whose accuracy cannot reasonably be questioned,' . . . or in accordance with and in furtherance of its review of Board and VA decisions." (citations omitted)).

23

24

G.C. Prec. 1-2017 is riddled with inconsistencies and unsupported assertions, and it conflicts with caselaw and the opinions of medical and governmental authorities, so I do not find its categorical exclusion of obesity from its unstated definition of disease to be persuasive. And the Board did not even address *Larson* or *Saunders*, obviously pertinent precedential cases, in its unitary decision denying service connection for the veteran's acknowledged obesity. I respectfully dissent from the Court's leaving the Board's direct-service-connection denial undisturbed.

24